BUCKLES, APPELLANT AND CROSS-APPELLEE, *v.* BUCKLES, APPELLEE AND CROSS-APPELLANT, ET AL.

(No. 86AP-714—Decided
March 22, 1988.)

*Brownfield Law Offices* and *C. William Brownfield,* for appellant and cross-appellee.

*Jeffrey A. Grossman Co., L.P.A., Jeffrey A. Grossman, Schottenstein, Zox & Dunn* and *Harvey Dunn,* for appellee and cross-appellant.

WHITESIDE, P.J. Plaintiff, Gretchen S. Buckles, appeals from a decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, and raises the following assignments of error:

"1. The trial court erred in accepting as a choice of custodial parent pursuant to R.C. 3109.04 the in-chambers statements of Andre J. Buckles, age 12, as the child clearly did not elect to place his permanent custody with either party.

"2. The trial court erred in failing or refusing to grant plaintiff-appellant's motion for in-chambers conference, without counsel, with minor child concerning purported custody election.

"3. The trial court erred in awarding permanent custody of all three minor children of the parties in part based upon his conclusion that because such children should not be separated one from the other, they should all be given unto the permanent custody of the appellee, where the court had determined the custody of the oldest child of the parties based upon his insufficient election and his

pre-judgment of the custody issue based upon the previous temporary custody award.

"4. The trial court erred in extending to this case a presumption that the party who had received temporary custody should be favored over the party who had not, and by that presumption failing or refusing to exercise reasonable discretion in determining the issue of permanent custody at the time of trial.

"5. Where both the value and the distributive character of multiple property items was [sic] in dispute in divorce proceedings, it was error for the trial court not to adequately disclose how his lump-sum award in property division was determined, as such an adjudication prevents an appellate court from being able to effectively review such award.

"6. The trial court erred in refusing to award plaintiff-appellant her interest in certain real properties titled in the name of defendant-appellee.

"7. The trial court's finding of fact 25, incorporated under its decision of June 20, 1986, and subsequent judgment entry-decree of divorce, that the plaintiff 'had no interest' in the paintings of Jean Crotti, and that there was insufficient evidence with which to determine whether there had been an increase in the value thereof during the pertinent period is both erroneous at law and contrary to the manifest weight of the evidence.

"8. The trial court erred in refusing to provide maintenance alimony and/or attorneys' fees and costs of litigation for the appellant wife, where she had been employed only one year early in the 18-year marriage of the parties, having been a homemaker and primary care-giver to the parties' minor children for the last 12 years of that marriage, and where the plaintiff-appellant had no expectancies of inheritance, controlled no assests, had

substantial debts to repay, and where her appellee husband received well in excess of $100,000.00 annually in salary and expenses, held a law degree and had practiced as an attorney, maintained a lucrative position as manager of substantial wealth for his 82-year old parents, controlled significant real and personal property in his own name, and had a multi-million dollar expectancy of inheritance.

"9. The trial court erred in failing to distribute between the parties all of the personal, marital property listed on plaintiff's exhibit No. 74, apparently having exclusively utilized an exhibit submitted by defendant-appellee which related to only a portion of the same property.

"10. The trial court erred in determining that property in the possession of the parties which had originated from one or the other of the defendant-appellee's parents should be returned to defendant-appellee upon divorce and in failing to consider the value thereof in its property division order under the facts of this case.

"11. The trial court erred in excluding as 'hearsay' the sworn statements of the plaintiff-appellant at trial concerning the donative intent of the defendant-appellee's mother, expressed by her conduct and words at the time that transfers of property were made.

"12. The trial court erred in overruling plaintiff-appellant's contempt motion filed against the defendant-appellee for his refusal to make temporary alimony and automobile lease payments for the period January 1, 1986 through the date of trial.

"13. The trial court erred in reducing the plaintiff-appellant's property award by the amount of certain checks she had cashed pending divorce while at the same time denying her motion for contempt filed against the defendant-appellee by reason of his

failure to pay four-months' temporary alimony, and automobile rental charges, thereby excusing such arrearages.

"14. The trial court erred in refusing to consider providing a future award to plaintiff-appellant of a financial interest in the share of property which the appellee stood to inherit from his parents, pursuant to their wills and trusts naming him a devisee and beneficiary thereunder, under the circumstances of this case.

"15. The trial court erred in refusing to grant a divorce to plaintiff-appellant on grounds of extreme cruelty and/or gross neglect of duty, as opposed to that of one-year separation which had lapsed between her filing for divorce and trial of this action."

Defendant, Andre M. Buckles, appeals from the same decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, and raises one assignment of error, which he terms a cross-appeal:

"The lower court erred as a matter of law and abused its discretion in considering as part of the lump-sum alimony award to the plaintiff below (cross-appellee) the appreciation in value on nonmarital property owned by the defendant below (cross-appellant)."

The parties' eighteen-year marriage was terminated by a decree of divorce awarded to both parties on the grounds that they had, without interruption and without cohabitation, lived separate and apart for one year. Four children were born of the marriage. Custody of the three living minor children was awarded to the defendant with reasonable visitation rights awarded to the plaintiff. In the latter years of their marriage, the parties enjoyed a luxurious standard of living maintained primarily by defendant's inheritances, defendant's family trust and gifts from defendant's family.

Defendant is employed by his family's trust as a manager of trust farm property and receives from $92,000 to $95,000 per year after expenses. Additional benefits include an automobile and golf club memberships. Plaintiff was employed early in the marriage but has worked as a homemaker for the past twelve years.

In the judgment entry of July 23, 1986, the trial court, in lieu of specific provisions, awarded the plaintiff lump-sum alimony of $180,000 payable within the year of the judgment entry with such amount to bear interest at the legal rate to be paid on a monthly basis until the lump-sum amount was paid. The court also awarded plaintiff a one-half interest in the existing IRA account of defendant, a one-half interest in an oil well and in defendant's stock in Prestwick Corporation. No sustenance alimony was awarded to plaintiff nor was she required to pay child support other than that furnished during visitation.

Defendant, on the other hand, was awarded all other property and debts acquired through the marriage including property in Michigan, Columbus, and Florida, paintings and artwork, family heirlooms and silver, and the marital home. Both parties were expected to pay their own attorney fees. Court costs not covered by deposits were awarded to the defendant. The trial court based its decision on an extensive list of findings of fact.

Plaintiff, in her first four assignments of error, contends that the trial court erred to her prejudice in considering the in-chambers statements of her son an "election"; in failing to grant plaintiff an in-chambers conference concerning the custody election; in awarding defendant custody of all three children based on an insufficient election and on the temporary custody only; and in entertaining a presumption that the parent awarded

temporary custody should be favored over the other in determining permanent custody.

The law to be applied is R.C. 3109.04(A), which directs the court to determine the custody of any minor children and states, in pertinent part:

"* * * [T]he court shall decide to whom the care, custody, and control of the children shall be given. The court may grant the care, custody, and control of the children to either parent or * * * to the parents jointly. The court shall take into account that which would be in the best interest of the children. The court may allow any child who is twelve years of age or older to choose * * * the parent with whom the child is to live, unless the court finds that the parent so selected is unfit to take charge or *unless* the court finds, with respect to a child who is twelve years of age or older, that *it would not be in the best interest of the child to have the choice.* * * *

"If the court allows any child who is twelve years of age or older to choose the parent with whom the child is to live, the court shall offer the child the opportunity to inform the court of the choice in chambers or in open court. If the child elects to inform the court of the choice in chambers, no persons other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers when the child informs the court of the choice and is questioned with respect to the choice." (Emphasis added.)

R.C. 3109.04(C) directs that all relevant factors are to be considered when the court determines the best interests of the child with regard to custody including the wishes of each parent, the wishes of the child if eleven years of age or older, the child's interaction and interrelationship with parents, siblings and any other persons who significantly affect the child's best interests, the child's adjustment to home, school and community, and the mental and physical health of all persons involved in the situation. Moreover, the Ohio Supreme Court in *Trickey* v. *Trickey* (1952), 158 Ohio St. 9, 47 O.O. 481, 106 N.E. 2d 772, stated that the trial court has great discretion to determine custody, indicating that the ability of the trial court to exercise such discretion is peculiarly important because the knowledge obtained through contact with and observation of the parties is not ordinarily conveyed to a reviewing court. However, this statement was prior to adoption of the present standards of R.C. 3109.04 which must be considered and applied by the trial court in exercising discretion, and which limits the extent or area of discretion. As to an election by a child, however, the issue is not whether the choice made by the child is in his best interests, but rather whether it is in the best interests of the child to have the choice whatever it may be.

The trial court conducted an in-chambers examination of the wishes of the parties' twelve-year-old son regarding a possible election and existing custody arrangements without the parties or counsel present. The record, in pertinent part, was as follows:

"A. Well, I don't want to make either one of them upset, but I think that I would probably do more with my dad.

"Q. You would what?

"A. I would probably do more with my dad.

"Q. There is something in life beside sports, too.

"A. Yes, I know.

"Q. And do you feel maybe you would get some other things in life if you elected to live with your mother, or have you thought about that?

"A. Yes. I really am not sure about a decision but I like the way it is going now.

"Q. Okay. And then basically that is with your mother having relatively reasonable and liberal visitation and maybe you would like to have a little bit more liberal?

"A. Yes.

"Q. But your dad is the custodian. Now, has your dad promised you anything like, 'I will open up a trust account or buy you a pony,' or anything like that, 'if you say that you want to live with me'?

"A. No, neither of them have [sic] said anything like that.

"Q. Have they put any pressure on you by saying, 'I am not going to speak to you,' or anything like that?

"A. No.

"Q. Neither one of them?

"A. No. I really wouldn't mind who had custody of me, though, as long as it sort of stays the way it is, because I like the arrangement rather than seeing more of one person than the other.

"Q. Okay. I think I got you. Is there anything that you would like to tell me about this at all?

"A. No, not really.

"Q. And is there anything else that might be helpful in making my decision concerning your custody?
"'* * *

"Q. And if I decide after hearing the whole thing that your mother should be the one that has custody rather than your dad, you wouldn't be terribly upset about that, would you?

"[A.] No.

"Q. You can live with whatever I decide; is that right?

"A. Yes.

"Q. And regardless of who has custody, you want to spend a lot of time and have visitation with the other person?

"A. Yes."

It is clear from the record that Andre Buckles, the parties' twelve-year-old son ("the child"), did not make an election to live with his father. Rather, he himself recognized that, because of the emotional ramifications of any choice, it might not be in his best interest to make one. He did not make *any* election except to elect to remain with his brother and sister. Statements like "I am really not sure about a decision but I like the way it is going now"; "I really wouldn't mind who had custody of me, though, as long as it sort of stays the way it is" defined as seeing each parent an equal amount of time; and an unequivocal "yes" in response to the question "[y]ou can live with whatever I decide; is that right?" are clearly not an election. They are statements that the present temporary custody arrangement is satisfactory as would be a permanent custody arrangement with his mother as custodial parent, as long as the amount of time spent with each parent remained as it was during the temporary custody arrangements. The trial court erroneously concluded that the child made an election to live with his father and found no reason why the election should not be honored.

After the in-chambers conference held by the trial court with the child, plaintiff filed a motion for a second in-chambers conference, without counsel, upon becoming alarmed that defendant had attempted to influence the child's election. The trial court requested that the trial proceed while the court considered the possibility of another in-chambers conference with the child, noting in particular:

"I talked to the child a little bit about that in taking his election, as to pressures, and other than the fact that he felt that he would be able to participate in sports more if his father had custody, I really didn't feel that he had been threatened or anything like that,

and that the election, such as it was, was not under duress."

The trial court did not choose to hold an additional in-chambers conference nor was it required to do so by statute, but the error of the trial court in finding an election by the child to live with the defendant when, in fact, the child elected to live with his brother and sister was not alleviated by the court's decision not to hold another in-chambers hearing.

Nevertheless, under the circumstances, the errors were not prejudical since the trial court also made an independent determination and reached the same conclusion as to custody and, in doing so, did not abuse its discretion.

The trial court found that:

"* * * [B]oth parents would like to be awarded custody. The children have had good interaction and interrelationships with both parents and siblings. The father has concerned himself more with the education and school work of the children, also educating the children to play various sports. Both parties have seen to the needs of the children throughout the marriage, although at times they have hired baby sitters to do much of the day to day watching of the children. When with the children, the defendant devoted himself to a closer interrelationship with the children.

"Both parties have a loving relationship with the children.

"The defendant has had the temporary custody of the children and would appear to have properly cared for the children during the past year. The father and children have been living in the same community, in fact, the same home the family lived in prior to the separation. The children are well adjusted in the home, school and community; all of the children are nice, well adjusted, polite children.

"While the 12-year-old elects to live with his father, he also wants to have a relationship with his mother by frequent visitation. Young Andre also desires to live with his sister and brother.

"It is desirable that the children be able to continue an interaction and relationship with each other.

"The children and the parties enjoy good physical and mental health.

"It is in the best interest of the children that they live with the defendant. It is in the best interest of the children that the mother have reasonable visitation with the children."

The record supports these findings, except for those regarding the child's making an election. The mere reference by the court to the father's having temporary custody does not necessarily indicate that the court relied on the temporary custody order as controlling. Rather, it appears that such reference merely reflects and supports the court's finding that the children have a good relationship with their father. An appellate court cannot substitute its judgment as to factual issues or discretionary determinations for the judgment of the trial court. In this case, even though there was testimony that the defendant could at times be a very demanding man, the trial court heard, and presumably considered, all the testimony of the witnesses and considered the environmental factors of R.C. 3109.04 as indicated by its findings of fact. Plaintiff has not demonstrated an abuse of discretion on the part of the trial court. The first four assignments of error are not well-taken.

Plaintiff in her fifth assignment of error contends that both the value of and the distributive character of property acquired during the marriage were in dispute, and the court erred by not adequately disclosing the method used to determine the lump-sum property division. We do not agree.

Civ. R. 52 requires the court to

make findings of fact and conclusions of law when properly requested by either party. Findings of fact and conclusions of law have a twofold purpose: They explain the factual and legal rationale for the trial court's decision and, as a consequence, help make meaningful appellate review possible.

The trial court awarded plaintiff $180,000 as lump-sum division-of-property alimony payable within one year of the judgment entry. The trial court determined not to award sustenance alimony to the plaintiff. The court in its findings of fact separately listed property acquired by the parties during the course of the marriage and gave a value to that property which the court used as a basis to determine the lump-sum award to plaintiff, and stated very simply in its conclusions of law that such property "was considered in the award of lump-sum alimony." The trial court valued defendant's present earning ability at $92,000 to $95,000. The trial court, after finding plaintiff to be well-educated and capable of working, determined her earning capacity only as "substantially less than that of defendant."

Upon appellate review, this court must rely on the findings of fact as set out by the trial court in determining whether the final result was reasonably equitable under the circumstances of the case. Our task is made difficult in this instance because the trial court did not place a definitive figure on plaintiff's earning capacity.[1] We can, therefore, in the absence of a determination or definitive evidence, assume only that plaintiff at least has the ability to earn minimum wage. Our task is further complicated by the trial

court's inability to place current values on property which it considered to be outside the marriage, although such property was used by the parties in support of the marriage (such as the Emmet County, Michigan, property and the Florida property), because of a lack of evidence as to the current value or enhancement in value.

Additionally, upon review this court must assume, because there is no basis for a contrary assumption, that when the trial court used the words "this amount has been considered in the lump-sum alimony award," the trial court was granting to plaintiff an amount equal to a fifty-percent interest in the property to which the court referred. Accordingly, the trial court's findings of fact adequately (although not expressly) disclose the valuation of property which the trial court awarded to the plaintiff and which the trial court used to support the result of its entire award.

As found in *Eisler* v. *Eisler* (1985), 24 Ohio App. 3d 151, 24 OBR 240, 493 N.E. 2d 975, it is error for a trial court to fail to make findings as to the fair market value of each item of marital property so that an appellate court can appropriately review the trial court's decision. Based on the fact that Ohio by statute and common law does not make a distinction between marital and nonmarital property, but requires all relevant property to be considered, the trial court errs when it does not, whenever feasible, in its findings of fact, determine the value of each piece of property considered in the determination of the alimony award.[2] This especially is required with regard to property expressly referred to in R.C. 3105.18, whether or not that property is specifically set aside to be divided. The manner and extent of such value determination vary with the circumstances of each case and the evidence adduced. In appropriate cir-

---

[1] See the second paragraph of the syllabus of *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 518 N.E. 2d 1197.

[2] See *Kaechele, supra.*

cumstances, it may be sufficient to make a single lump-sum valuation of all property or a class of property, such as a situation where one party is given all property and the other is awarded a lump-sum amount equal to half of the total.

In this case, however, limited by the testimony presented, the trial court adequately determined the valuation attributed to the expectancies and inheritances of the parties and the relative assets and liabilities of the defendant and the property brought to the marriage by both parties, all of which the trial court is to consider when determining whether alimony is necessary. However, in Finding of Fact No. 21, the court made a mathematical error in determining the current net equity of the Gahanna property resulting in a $10,000 difference to each party. Given the totality of the assets considered and the reasonableness of the court's property division, we do not find this error to be prejudicial, especially in light of our determination of the eighth assignment of error. The plaintiff's fifth assignment of error is not well-taken.

Plaintiff addresses the majority of her assignments of error to the division of property and sustenance alimony. The trial court has broad discretion to make property alimony and sustenance alimony awards. As stated in *Conner* v. *Conner* (1959), 170 Ohio St. 85, 90, 9 O.O. 2d 480, 483, 162 N.E. 2d 852, 855 (Taft, J., dissenting), and in *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140, an abuse of discretion may be found only where the determination of the trial court is unreasonable, arbitrary, or unconscionable. An appellate court may not simply substitute its own judgment of factual or discretionary issues for that of the trial court. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 20 O.O. 3d 318, 421 N.E. 2d

1293, and *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 75 O.O. 2d 474, 350 N.E. 2d 413, emphasize the importance of leaving discretion to the trial court to determine what property division is equitable, based on the facts and circumstances of each case. In addition, those cases hold that a potentially equal division should be the starting point of analysis, and that neither party should make a profit at the expense of the other.

Sustenance alimony and property-division alimony are necessarily interrelated parts of a single whole (alimony) under Ohio law expressed in R.C. 3105.18. To the extent feasible, each party should enjoy, after termination of a marriage, a standard of living comparable to that established during the marriage as adjusted by the various factors of R.C. 3105.18(B). The starting point is to place both parties on a parity with the marriage standard of living (not necessarily equality) after divorce considering all the factors of R.C. 3105.18. "Parity"[3] is necessarily an equitable term meaning essentially "equitably" equal rather than "mathematically equal." Parity may be accomplished by an award of sustenance alimony or of property-division alimony, lump-sum alimony, or a combination of these. R.C. 3105.18 does not contemplate that, in the absence of extraordinary circumstances, one party after termination of a marriage will enjoy the same or higher standard of living while the other party is forced to live on a greatly reduced standard of living from that established during the marriage, where the marriage is one of long duration. The standard of living established during the marriage is the highest, but not the lowest standard to be utilized in determining need for sustenance alimony. However, equality of

---

[3] See footnote 4, *infra*.

the standard of living between the parties is not necessarily required.

In making adjustments from parity, the duration of the marriage and the earning abilities of the parties are of prime significance while the income tax consequences to the respective parties must also be taken into account. In reaching for parity, R.C. 3105.18(B) requires the trial court to consider all relevant factors, including, but not limited to, the relative earning abilities (not just earnings) of the parties; the ages and physical and emotional conditions of the parties; the retirement benefits of each; the expectancies and inheritances of each; the duration of the marriage; the extent to which it would be appropriate for a custodian of a minor child to seek employment outside the home; the standard of living established during the marriage; the relative extent of education of each party; the relative assets and liabilities of each party; the property brought to the marriage by each; and the contribution of the spouse as a homemaker. The Supreme Court in *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318, 23 O.O. 3d 296, 432 N.E. 2d 183, emphasized that it is the equitableness of the result which must stand the test of fairness on review.

Plaintiff, in her sixth, seventh and tenth assignments of error, contends that the trial court erred in refusing to award plaintiff an interest in certain real property titled in the name of defendant, an interest in the paintings of Jean Crotti or the increased value thereof, and an interest in property in possession of the parties which originated from defendant's parents.

Neither by statute nor by common law does Ohio make a distinction between marital and nonmarital property with respect to alimony awards. Rather, by statute, the court is required to look at *all* relevant factors when determining alimony and is not to be bound by labels. R.C. 3105.18(B) requires the court to consider both the "property brought to the marriage" by either party and also the "expectancies and inheritances of the parties." At the same time, R.C. 3105.18(B) recognizes the existence of separate property of each party by requiring the court to consider the relative assets and liabilities of each party (this is what is loosely and sometimes confusingly referred to as "nonmarital property"). All property of either or both parties may be considered in determining the equitableness of an alimony award. A court must consider all property brought to and acquired during the marriage to ascertain how it shall be considered in determining the issue. In general, a court shall include as properly subject to division-of-property alimony all property acquired by either spouse during the marriage, except property acquired by one spouse during the marriage by bequest, devise or gift from a third party unless such property so acquired was used for purposes of the marriage.

Ordinarily, a court shall consider as property outside the marriage and excluded from property-division alimony, but not necessarily immune from an in-kind alimony award, any property brought to the marriage by a party which may include as well any property received by a party from a third party by gift, bequest or devise during the marriage. Property which is specifically and directly traceable to property outside the marriage shall also, for purposes of initial determination, be considered property outside the marriage. However, to the extent that property outside the marriage is enhanced in value during the marriage or is used to enhance the marriage, it shall be considered property subject to a division-of-property alimony award.

In all cases, only property in existence may be the subject of a division-

of-alimony award. Property incapable of division may be sold and the proceeds therefrom divided in an effort to achieve a reasonable property-division alimony award.

Consequently, under R.C. 3105.18, the court must first determine the separate property of each party, including but not limited to property held outside the marriage, and must divide between the parties the property acquired during the marriage, sometimes referred to as "marital property." After making this determination, the court must consider whether either party should be awarded alimony from the property of the other party by utilizing *all* relevant factors including those set forth in R.C. 3105.18. If the court determines that alimony in addition to the property division is necessary, it may be desirable that it be awarded from property acquired during the marriage. However, the court may, within its discretion, award as in-kind alimony property brought to the marriage by either party, which includes property given to either party by bequest, devise or gift from a third party. In all cases, the trial court has broad discretion (as stated in *Cherry, supra*) to determine what property division is equitable and there is no presumption that marital property must be divided equally, although equal division should be the starting point of the court's analysis.

In this case, there was ample testimony supporting the trial court's finding that items of real and personal property were gifts from the defendant's parents to defendant alone and were not to be divided upon termination of the marriage or to be considered in the division-of-property alimony award. The trial court treated plaintiff and defendant equitably. In each case, when awarding division-of-property alimony, the trial court gave to each party those items which were gifts from others to each individual party. The result is equitable although it may not be equal monetarily. Accordingly, plaintiff's sixth, seventh and tenth assignments of error are not well-taken.

The court awarded plaintiff the family silver, two cars and an interest in two of the defendant's investments, Prestwick Corporation and an oil well, and the defendant's IRA. These were worth a total of approximately $70,000. Additionally, the trial court awarded plaintiff a lump-sum payment of $180,000 to be paid within one year of the judgment entry and bearing a legal interest rate (ten percent) to be paid monthly until the entire amount was paid in full. Thus, the plaintiff's total award of property alimony amounts to $250,000 and the trial court did not prejudically err by refusing to award plaintiff a greater amount in property alimony when most property in possession of the parties originated from the defendant's parents.

However, it was error for the trial court to fail to award the plaintiff any sustenance alimony. The trial court found that the parties' luxurious lifestyle was the result of gifts from defendant's parents to defendant which included cash and personal and real property. Additionally, the trial court found that both parties appear to be healthy emotionally and physically, although the plaintiff has had some medical problems. The court further found that the defendant's earning ability, based on his employment by a family trust, is $92,000 to $95,000 per year, that defendant receives approximately $10,000 per year as a beneficiary of a family trust, and that defendant also has a law degree. As to plaintiff, the court found that she is well-educated and capable of working, but because of the marital lifestyle had not been employed for a number of years and has a substantially lower

earning capacity than that of the defendant. Since the trial court made no specific definitive finding as to plaintiff's earning ability, we must assume only that her earning capacity is at least at the minimum wage level which is approximately $7,500 per year. Conceivably, her earning ability could be considered enlarged to $8,000 to $10,000 per year.

Assuming defendant does not pay the lump-sum alimony payment until the last of the year, the court-ordered interest on that amount will be $18,000, making plaintiff's maximum potential income the first year $26,000 to $28,000 before taxes. In the succeeding years, however, plaintiff's income will drop substantially. If she pays the stipulated attorney fees and litigation costs of $84,000 (which does not include the cost of this appeal), plaintiff will then have less than $100,000 to invest for income purposes. Her interest rate on that amount cannot be assumed to be more than eight percent. Consequently, in the second year after her divorce, plaintiff's income will be $16,000 to $18,000 per year, or substantially less than the year immediately following the divorce.

On the other hand, defendant will be living in the luxurious marital home with the three children, receiving an income of at least $100,000 per year with only "paper" debts to his family and family trust which will be forgiven upon the death of his parents. This is neither parity, nor equitable, especially after an eighteen-year marriage in which plaintiff remained home for marital purposes to be with the children. Although the trial court found that both parties had contributed as homemakers, plaintiff is being penalized for not working outside the home during the marriage and thereby establishing a well-paying career for herself and thus attaining a greater earning capability.

At the very least, equity requires that plaintiff receive sufficient sustenance alimony to bring her to a reasonable standard of living, one in reasonable relationship to the standard maintained during the marriage.[4] Given the disparity of the value of property re-

---

[4] In reaching this conclusion, we are mindful of, and follow, *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 518 N.E. 2d 1197, released since this decision was originally drafted, the syllabus of *Kaechele* essentially stating the basis for the principle we outlined herein. However, *Kaechele* may be confusing because of the procedural stance of the decision of this court in that case since the majority of this court (two concurring judges) did not agree with much of the language of the "main" opinion. There is confusion and conflicting language of this court leading the Supreme Court to state, "* * * the court of appeals concluded that the failure of the trial court to place the parties in complete parity amounted to an abuse of discretion * * *." *Id.* at 95, 518 N.E. 2d at 1200. However, the language of the opinion in which the two concurring judges concurred stated:

"Under the Ohio statutory provisions, it is contemplated that each party should, to the *extent feasible,* enjoy after termination of the marriage a standard of living comparable to that established during the marriage, as adjusted by the *various factors required to be taken into account by R.C. 3105.18(B).* * * * In making adjustments from parity,* duration of the marriage and the earning abilities (not just earnings) of the respective parties are of prime significance." (Emphasis added.) *Kaechele* v. *Kaechele* (Nov. 13, 1986), Franklin App. No. 86AP-263, unreported, at 7.

The "main" opinion of this court did, however, note that no reason was apparent from the record why the parties had not been placed in complete parity but did indicate such complete parity is always to be required. *Id.* at 9.

"Parity," however, as used by this court, does not mean "mathematical equali-

tained by each party, the extent to which family gifts to defendant were used during an eighteen-year marriage, the substantially lower earning ability of plaintiff (created by the parties' decision that plaintiff remain home with the children), and the necessity of plaintiff's paying from the lump-sum award the amount she owes in attorney fees and litigation costs, it was error for the trial court to award neither sustenance alimony nor attorney fees to plaintiff.

However, plaintiff is not entitled to an award of a future interest in defendant's inheritance. Under R.C. 3105.18, this inheritance is a factor to be considered in awarding plaintiff sustenance alimony, but is not a current asset to be divided either at the time of the divorce or in the future. Accordingly, plaintiff's eighth assignment of error is not well-taken.

Likewise, plaintiff's fourteenth assignment of error, which contends that the trial court erred by refusing to award plaintiff a financial interest in the share of property defendant would inherit, is not well-taken.

Plaintiff, in her eleventh assignment of error, contends that the trial court erred when it excluded as hearsay plaintiff's testimony at trial concerning the donative intent with respect to certain family heirlooms.

A deposition of defendant's mother was taken with both parties and their attorneys present. At the outset, defendant's attorney stated that it was "intended that this deposition may be used as testimony in any one or more hearings in this case." Plaintiff cross-examined the witness as

to the nature and intent of the gifts. The witness testified that she had given the furnishings to her son, the defendant, but if her son were to die, the articles would belong to plaintiff with the expectation that they would go to the children when the children were old enough. Defendant's mother testified that she expected plaintiff to take care of them until that time.

At trial, plaintiff attempted to testify as to what defendant's mother had said as she presented certain family heirlooms to plaintiff. The court sustained defendant's objection that such statements were hearsay. Later, the mother's testimony by deposition was entered into the record.

If entered for the truth of the matter asserted, plaintiff's testimony as to the words uttered by the witness, defendant's mother, was hearsay under Evid. R. 801(C). However, under Evid. R. 803(3), the statement should not have been excluded because it was a statement indicative of the witness' then-existing state of mind or intent. Plaintiff had been present to hear the witness' words and to observe the witness' conduct.

However, Civ. R. 61 requires that no error in the exclusion of evidence is to be grounds for the granting of a new trial unless the trial court's refusal to admit the testimony appears inconsistent with substantial justice. In light of our discussions regarding the division-of-property alimony and sustenance alimony, this court finds the error not to be prejudicial. Accordingly, plaintiff's eleventh assignment of error is not well-taken.

Plaintiff, in her ninth assignment

---

ty," but rather, "equitable equality," and relates not to the relative standard of living of the parties but instead to the relationship of the post divorce-decree standard of living of each party with the standard of living established during the marriage. "Parity" is

not a synonym of "equality" in the context in which it is used herein. However, neither party is entitled to a sustenance alimony award to enable him or her to enjoy a standard of living higher than that enjoyed during the marriage.

of error, contends that the trial court erred by failing to distribute all the personal marital property listed on plaintiff's exhibit No. 74. We agree.

The trial court found that the parties acquired certain household furnishings and effects listed on defendant's exhibit "P" and held that such property, other than the DuChamp painting, should be divided between the parties giving plaintiff the first choice of an item and then alternating choices with defendant until the items were distributed. Plaintiff's exhibit apparently includes some items not listed in exhibit "P" which were given to plaintiff by her family or were purchased by the parties or given to them as wedding gifts.

The record filed with this court does not include exhibit "P." In order to completely and adequately divide all personal property acquired during the marriage, the trial court is required to review plaintiff's exhibit No. 74 and to determine which items were gifts to plaintiff from her family and to award those to plaintiff consistent with the award to defendant of gifts from defendant's family. Only after that determination is it appropriate to direct the parties to divide, in the manner provided for in the decree, any other items which were not contained in exhibit "P" and which the trial court finds were acquired by the parties during the marriage or received by the parties as wedding gifts. To this extent, the ninth assignment of error is well-taken.

Plaintiff, in her twelfth and thirteenth assignments of error, contends that the trial court erred by overruling plaintiff's contempt motion for defendant's refusal to make temporary alimony and automobile lease payments while, at the same time, reducing plaintiff's property award by the amount of checks she had cashed pending divorce.

On cross-examination, plaintiff testified that she had endorsed four checks over a period of nine months, signing both her name and defendant's name, and had opened a new account in an out-of-city bank and deposited the checks therein. One month after the last check was deposited, defendant ceased paying temporary alimony payments and automobile lease payments. The money cashed by plaintiff was in excess of $10,000 ($10,798.45). The payments required by defendant by the temporary orders were $1,000 per month which, together with car lease payments over a three-month period, totaled less than the $10,798.45 cashed by the plaintiff. Defendant testified that he used approximately $27,500 received from an investment in Prestwick Corporation to pay taxes due, living expenses, school tuitions and his personal litigation expenses. At the end of the trial, the court ruled that plaintiff's motion for contempt against the defendant for failure to pay temporary alimony should be dismissed. This was not error.

Plaintiff acted improperly in, without permission, express or implied, signing her husband's signature on checks made out to him from his family's trust while she was under temporary orders which awarded her sustenance alimony. It was equally improper for defendant to decide unilaterally not to pay temporary alimony support and automobile lease payments in retaliation. This is a classic example of why two wrongs do not make a right. This court does not and never will condone essentially dishonest, self-help measures which make a mockery of both the law and the orders of this court.

Plaintiff, by cashing forged checks was adequately (although illegally) recompensed for the money which defendant failed to pay her under the temporary orders. There is evidence

that defendant did pay some litigation expenses from marital assets, but in light of the totality of our determination herein, no prejudice has resulted to plaintiff. Ordinarily, the law will leave parties, both of whom have acted illegally, as it finds them. Accordingly, plaintiff's twelfth and thirteenth assignments of error are not well-taken.

Plaintiff, in her fifteenth assignment of error, contends that the trial court erred by refusing to grant plaintiff a divorce on grounds of extreme cruelty and/or gross neglect of duty.

The trial court awarded the parties a divorce finding:

"* * * [U]pon the evidence adduced, that neither party has been guilty of gross neglect of duty or extreme cruelty but that both parties are entitled to a divorce as requested in their amended pleadings on the basis that the husband and wife have without interruption and without cohabitation, for one year lived separate and apart."

R.C. 3105.01 enumerates the grounds upon which the court may grant a divorce and includes living separate and apart for one year.

Although the record contains evidence of defendant's verbal abuse of plaintiff, this court finds that the trial court did not abuse its discretion by failing to find sufficient evidence to prove *extreme* cruelty, even though there was evidence of some cruelty. In addition, while there is some evidence of defendant's neglect of duty, this court finds that the trial court did not abuse its discretion by failing to find *gross* neglect of duty. See *Glimcher* v. *Glimcher* (1971), 29 Ohio App. 2d 55, 58 O.O. 2d 37, 278 N.E. 2d 37. The trial court made a specific finding that:

"* * * [Although] the defendant did on occasion make sarcastic and critical remarks, particularly about plaintiff's cooking and dress, [t]he remarks of * * * [defendant] were more frequent after the plaintiff started talking about a divorce, they were not, however, a continuous course of conduct designed to destroy the plaintiff's peace of mind. There was not sufficient evidence that either of the parties had breached a legal obligation of the marriage."

Moreover, even assuming there was gross neglect of duty or extreme cruelty on the part of the defendant, a failure by the trial court to so find is not prejudicial unless plaintiff can show that his error affected the child custody, sustenance alimony and division of property. A divorce was granted which reflects no "fault" upon plaintiff. That defendant may have escaped being "tagged" with "fault" does not constitute prejudice of a nature justifying reversal. The trial court had broad discretion to determine the proper grounds for divorce and we cannot find otherwise in the absence of any showing that there was an abuse of discretion of such a nature as to affect the distribution of property, the award of sustenance alimony, the award of child custody, or otherwise to prejudically affect the complaining party.

On review, we always bear in mind the trial court's large measure of discretion to determine the sufficiency of the evidence, the credibility of the witnesses and the weight to be given to the testimony. This court cannot find reversible error in the grounds for divorce when there is no showing of prejudice. Accordingly, plaintiff's fifteenth assignment of error is not well-taken.

Defendant, in his cross-assignment of error, contends that the trial court erred by including a portion of the enhanced value of the Gahanna property in the lump-sum payment of plaintiff.

The trial court found that the defendant owns the Gahanna property which was a gift from his father with a

value of $449,484. The trial court found the property had a present net equity of $728,000 (which, with a correction for mathematical error, is in actuality $748,000). The trial court found, in addition, that "defendant and his wife have not made any major improvements to this property to increase its value other than signing some easements and maintaining the mortgage payments (primarily interest). The payments and taxes over and above the income from property amounted to approximately $125,000 to $150,000."

The Ohio Supreme Court in the syllabus to *Worthington* v. *Worthington* (1986), 21 Ohio St. 3d 73, 21 OBR 371, 488 N.E. 2d 150, held that:

"A trial court in determining the division of property pursuant to the factors contained in R.C. 3105.18 and all other relevant factors, does not abuse its discretion by apportioning the appreciation in value of non-marital property as a marital asset, where significant marital funds and labor are expended to improve and maintain such property."

The trial court found that significant marital funds were expended on the Gahanna property to justify inclusion of its appreciation in the property-division.

The Ohio Supreme Court in *Worthington, supra,* at 75, 21 OBR at 373, 488 N.E. 2d at 152, reiterated its statement in *Cherry, supra,* that " '* * * it is ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce.' " In *Worthington, supra,* the Supreme Court again emphasized the importance of the trial court's consideration of the factors contained in R.C.

3105.18 and all other relevant factors in arriving at a property division and recognized that "* * * a formulaic division of property is virtually an impossible task for the trial court." *Id.* at 75-76, 21 OBR at 373, 488 N.E. 2d at 153.

In light of our foregoing discussion with respect to the division-of-property alimony and sustenance alimony, defendant's cross-assignment of error is not well-taken.[5]

For the foregoing reasons, plaintiff's first, second, third, fourth, fifth, sixth, seventh, tenth, eleventh, twelfth, thirteenth, fourteenth and fifteenth assignments of error are overruled. Plaintiff's eight and ninth assignments of error are sustained. Defendant's cross-assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas is affirmed except with respect to sustenance alimony and attorney fees and division of personal property, and is reversed with respect to those matters. This cause is remanded to that court for further proceedings in accordance with law consistent with this opinion. The costs of this appeal are assessed against defendant.

*Judgment affirmed in part,
reversed in part and
cause remanded.*

REILLY and YOUNG, JJ., concur.

YOUNG, J., concurring. I concur in the court's opinion. However, I note that in the trial court's discussion of the issues, there is no provision for child support to be paid, by the plaintiff-appellant. Upon review of the Ohio Child Support Guidelines, effective. Oc-

---

[5] Since no party has raised the issue, we do not feel the child-support question addressed by Judge Young in his concurrence is before us for determination nor do we determine that question herein.

tober 1, 1987, issued by the Ohio Supreme Court, there is found the following language from the Committee Comment, which reads in pertinent part as follows:

"Based on this economic evidence, the Ohio Child Support Guidelines calculate child support as the share of *each* parent's income living in an intact household. If one parent has custody, the amount calculated for that parent is presumed to be spent directly on the child. For the non-custodial parent, the calculated amount establishes the level of child support. * * *" (Emphasis *sic.*) 33 Ohio St. 3d xxvi, at xxxviii.

As Judge Whiteside indicates, the plaintiff-appellant: (1) has earning capability, (2) has income which will be guaranteed from the investment of the funds to her by the trial court's ordered property division and (3) will receive sustenance alimony in an amount which will be determined by the trial court pursuant to this court's decision.

While potential earning capability and the income from investments are specifically referred to by the Ohio Child Support Guidelines, those same guidelines are silent as to any sustenance alimony received from this marriage.

Further, in the guidelines, it is said that:

"Upon adoption of these Guidelines, when a support order due an obligee would have a variance in excess of 10%, that variance shall be deemed to be a substantial change of circumstance to justify a modification." Former C.P. Sup. R. 75(B). See 33 Ohio St. 3d at xxvi.

Based upon those sources of income which must be considered as mandated by the guidelines, absent any consideration of sustenance alimony from this marriage, the plaintiff-appellant's income is in excess of ten percent of the total income of the parties.

For the foregoing reasons, it is my opinion that the trial court is obligated to apply the factors which are to be considered in the determination of an appropriate child support order.