OPINION
This is an appeal from the Geauga County Court of Common Pleas, Domestic Relations Division. Appellant, Madeleine A. Holzheimer, appeals the trial court's award of spousal support.
Appellee, E. Timothy Holzheimer, and appellant were married on June 25, 1966, in Cleveland, Ohio. Three children, all of whom are emancipated, were born as issue of the marriage. On July 18, 1997, appellee filed for divorce on the ground of incompatibility. On June 30, 1998, appellant filed her pretrial statement. On that same date, appellee submitted his stipulation of facts. The parties settled the issue of division of property, but were unable to resolve the issue of spousal support. A trial was held on October 1, 1998, on the issue of spousal support.
At the trial, appellee testified that he had been with the firm he was working at since 1966, and that he had been a partner there since 1972. He stated that he and appellant sent their three children to Gilmore Academy, a private high school in Cleveland, and then paid for them all to attend private universities for their undergraduate degrees. Their education expenses totaled in excess of $250,000. He and appellant also spent about $15,000 for each of their two daughters' weddings and they gifted their son $18,000 for a starter house. Appellee further related that he and appellant did not travel often nor did he do a lot of entertaining because most of his entertaining involved taking clients to breakfast and appellant's participation was not always required. Additionally, "it was hard for [appellant] to put something together at that time" due to her behavioral dysfunctions. Appellee revealed that as a result of appellant's condition, they had limited access to people and their friendships began to dwindle. Appellee characterized their standard of living as "adequate."
Appellee revealed that prior to filing for divorce, he was giving appellant $1,500 a month for almost ten years to do with as she pleased. After he filed for divorce in July 1997, he continued to give appellant that amount of money. Only twice since that time had appellant requested more that the $1,500 per month that she was given. He also paid, during their separation pending this action, the monthly $2,500 mortgage and all of her monthly expenses, which totaled between $1,000 and $1,500. Basically, appellee testified that he was in good health. He revealed that his personal monthly expenses totaled approximately $6,375.
Appellant testified that she worked the first year of the marriage while appellee attended law school. She had suffered from asthma since she was twenty-one years old, she was diagnosed with bipolar disease in 1997, and she was a recovering alcoholic. She admitted that since she and appellant separated in December 1996, he had been paying all of her household living expenses. However, she purchased her own food and gasoline. She indicated that she had been living with her son and eventually she wanted to move into a condominium, which would cost about $175,000. She characterized her standard of living during the marriage as "a pretty high standard of living." Appellant prepared a budget of her estimated monthly expenses which totaled about $9,290.
On cross-examination, appellant stated that she would like to make a down payment of $25,000 on the condominium. Appellee's attorney informed her that she had prepared a budget on July 6, 1998, which indicated that her monthly needs were $5,125. Moreover, appellee's attorney questioned appellant regarding the several items on her $9,290 budget that were incorrect. Appellant listed a car expense of $375, a domestic help expense of $75, and charitable contributions of $150. However, no such monthly expenses existed at the time. Her $9,290 budget calculation included a monthly $2,500 tax reserve, a monthly savings or investment of $300, and installment payments on debts, which were taken into account with the property settlement.
As part of its findings of fact and conclusions of law filed on May 11, 1999, the trial court found that: (1) the marriage lasted thirty-two years; (2) both parties are fifty-five years of age; (3) appellant was a high school graduate, worked the first year of the marriage, was diagnosed with a bipolar disorder, and was a recovering alcoholic; (4) appellee completed college, obtained a law degree, and worked as a certified public accountant ("CPA") and certified financial planner; (5) in 1997, appellee earned a gross income of $313,527 and a net income of $152,621; (6) a ten-year review of appellee's income revealed that he earned an average yearly gross income of about $195,000; (7) the parties paid for private secondary education of all three children along with their college tuition, room and board, and related expenses; (8) the parties paid for two weddings, each of which cost about $20,000, and gifted their son in excess of $15,000 to assist him with start-up housing costs; (9) prior to filing the complaint for divorce and during the pendency of the action, appellee provided appellant with $1,500 per month for her day-to-day living expenses, paid $4,000 toward the mortgage and other household expenses, and when appellant requested additional money, he supplied her with it.
Thereafter, the trial court concluded that in making its determination as to the award of spousal support, it must "consider the factors enumerated in [R.C.] 3105.18." In the divorce decree also dated May 11, 1999, the trial court, based on its findings of fact and conclusions of law, issued appellant spousal support in the amount of $4,906.20 per month for an indefinite period of time.[1] It is from that entry that appellant filed the instant appeal and asserts the following as error:
 "The trial court's award of spousal support was unreasonable, unconscionable, and arbitrary."
 Appellant's sole contention is that the trial court erred in determining the amount of spousal support awarded to her.
In Ohio, it is well-established that a trial court has broad discretion in formulating an award of spousal support and that a reviewing court will not disturb an award absent a finding that the court abused its discretion. Blakemore v. Blakemore (1983)5 Ohio St.3d 217, 218. An abuse of discretion is more than a mere error of law; "`it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Id. at 219, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157.
Pursuant to R.C. 3105.18, a trial court must award spousal support when it is "appropriate and reasonable." Davis v. Davis
(Mar. 31, 2000), Portage App. No. 98-P-0122, unreported, at 5;Clontz v. Clontz (May 16, 1997), Trumbull App. No. 96-T-5531, unreported, at 6. R.C. 3105.18(C)(1) provides:
 "* * * In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors * * *."
 The factors the court must consider are as follow:
 "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant." Davis, supra, unreported, at 6; Kraska v. Kraska (Dec. 4, 1998), Portage App. No. 97-P-0094, unreported, at 6; Waleryszak v. Waleryszak (Aug. 15, 1997), Trumbull App. No. 96-T-5498, unreported, at 3-4.
 In Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784, this court stated:
 "In making spousal support awards, R.C. 3105.18 requires the trial court to review the statutory factors in [R.C. 3105.18(C)(1)] that support such an order, and then indicate the basis for awarding spousal support in sufficient detail
to facilitate adequate appellate review. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 96-97 * * *." (Parallel citation omitted.) (Emphasis added.)
 We further held that a court does not satisfy Kaechele by simply stating that it considered the R.C. 3105.18(C)(1) factors. Id. In Stafinsky, we explained that when the trial court's judgment entry reveals that the only criterion it explicitly considered was the income of the parties, that entry is insufficient. Id.
In addition, this court has provided:
 "`It is required that an entry awarding spousal support provide some illumination of the facts and reasoning underlying the judgment. (Kaechele v. Kaechele (1988), 35 Ohio St.3d 93); Schneider v. Schneider (1989), 61 Ohio App.3d 164. This is true even though evidence was introduced below and contained in the record which may support some award of spousal support. * * *' (Citation omitted.)" Herman v. Herman (Mar. 28, 1997), Portage App. No. 96-P-0194, unreported, at 9, quoting Killing v. Killing (Sept. 30, 1994), Portage App. No. 93-P-0096, unreported, at 6.
 Also, the resulting award must be "fair, equitable and in accordance with law." Kaechele, 35 Ohio St.3d at 94. A fair result requires that "[t]o the extent feasible, each party should enjoy, after termination of a marriage, a standard of living comparable to that established during the marriage as adjusted by the various factors of [R.C. 3105.18]." Buckles v. Buckles (1988), 46 Ohio App.3d 102, 110.
In the present case, it is evident from a review of the findings of fact and conclusions of law, which are a part of the judgment entry, that the trial court provided specific points of analysis with regard to the R.C. 3105.18(C)(1) factors, and after doing so, determined that the spousal support award was "reasonable and appropriate."
In its findings of fact, the trial court listed a factual finding regarding each relevant factor and provided an analysis of the factors. Specifically, the court found that both parties were fifty-five years of age and the marriage lasted thirty-two years. Appellee earned an average of $195,000 per year, whereas appellant had no earnings. Appellee attained a higher earning ability than appellant because she spent the majority of the marriage years at home. Further, appellee was in good health, whereas appellant was diagnosed as having a bipolar disorder and was a recovering alcoholic.
Moreover, appellant was only a high school graduate and appellee had obtained a law degree and was a CPA. Appellee worked outside of the home throughout the marriage, but appellant only worked the first year of the marriage, as she was the primary homemaker and care provider. Further, the assets and liabilities were divided pursuant to a property settlement agreement, which was attached to the judgment entry.
This court has held that a spouse who is in a long-term marriage, who is older, or who has not had a chance to develop a career outside of the home and who does not have significant independent assets is generally in a favorable position to receive spousal support from the other spouse. Clontz, supra, unreported, at 10. Here, there was a marriage of long duration where appellant had no opportunity to achieve an earning potential similar to that of appellee. Thus, the trial court found that appellant would not be able to adequately support herself while appellee was found to have the resources and ability to provide support.
Additionally, although R.C. 3105.18 does not specifically require a spousal support award to provide the parties with an equal standard of living, equity requires that a disadvantaged spouse receive sufficient spousal support to bring him or her up to a reasonable standard of living, in light of the standard maintained during the marriage. Addy v. Addy (1994), 97 Ohio App.3d 204,208.
Thus, it is our view that the factors listed in R.C.3105.18(C)(1) were sufficiently examined with the underlying evidence and supported the trial court's determination that spousal support was appropriate. However, although we conclude that an award of spousal support was appropriate, the award may not have been reasonable.
In arriving at the spousal support amount awarded to appellant, the trial court took the $5,500 figure appellee was paying appellant prior to the time of their separation and subtracted approximately $1,200 from that amount because of appellant's anticipated reduction in her mortgage expense, and determined that her need was about $4,327. Furthermore, the trial court in its "Findings of Fact and Conclusions of Law" mentioned that the property division would provide appellant "with cash assets in excess of $200,000 after she makes a 20% down payment on the purchase of a condominium anticipated to cost $175,000. The reasonable investment performance on the remaining cash will yield [appellant] a net amount of approximately $1,300 per month. * * *"
Pursuant to our prior case law, it is our view that the trial court erred in making the foregoing determination. In Fulmer v.Fulmer (May 5, 2000), Trumbull App. No. 98-T-0146, unreported, at 9-10, we held that:
 "[I]t is an exercise in speculation to reduce a spousal support obligation on the basis that property divided during divorce could be invested. * * * [S]uch an exercise was speculative because: (1) the party receiving spousal support need not actually invest the money, (2) even if it will be invested, there is no identified investment source at this juncture of the proceeding, and (3) the rate of return cannot be determined because the most advantageous investment scheme cannot be decided on the information before the trial court." See, also, Lonsway v. Lonsway (Sept. 3, 1999), Lake App. Nos. 98-L-130 and 98-L-171, unreported.
 In Fulmer, the appellant claimed that in issuing spousal support, the trial court failed to consider the $45,027.58 cash lump sum property division payment he made to the appellee. The appellant also argued that the appellee would realize a monthly income in the amount of $225 per month for the rest of her life by investing the lump sum property division payment made to her. This court stated there was no evidence in the record that the appellee could obtain a rate of return on her investment that would achieve income in the amount of $225 each month.
Similarly, in Lonsway, the appellant proposed paying the appellee a one-time, lump sum spousal support payment of $40,000, and suggested that she sell the marital home, buy a condominium around $80,000, liquidate the remainder of her assets, and invest the money in high-yielding money market accounts. The appellant explained that, if properly invested, the appellee would have more than enough money to satisfy her needs. He then attempted to introduce evidence of various mutual fund accounts that paid a yearly rate of return of about seventeen percent over the past five years, but the trial court interjected and questioned the relevancy and admissibility of this evidence. We stated that "[t]he trial court was not required to accept the type of alternative advocated by [the] appellant in determining what [was] `reasonable and appropriate' including tenuous forecasts of the future status of the stock market." Id. at 12.
This court has consistently held that a spouse is not required to invest his or her liquid portion of the marital property division to reach a reasonable and appropriate level of support. Fulmer and Lonsway do not expressly address the question of whether a marital asset that is income-producing at the time the division of property is ordered (i.e., rental properties that produce cash flow) should be circumscribed in the same way as those which are converted into liquid character at the time of division. Hence, even though R.C. 3105.18(C)(1) provides that a court may consider the income of the parties "from all sources," this statutory section has been interpreted by this court to not apply to potential future income from assets derived from a division of marital property that take on a liquid character at the time of division.
Thus, it is our determination that the trial court abused its discretion in the amount it awarded appellant. On remand, the trial court must determine a reasonable amount of spousal support without considering any income that may be derived from requiring her to invest her property settlement.
For the foregoing reasons, appellant's assignment of error is well-taken. The judgment of the Geauga County Court of Common Pleas, Domestic Relations Division, is reversed and remanded for further proceedings consistent with this opinion.
 ______________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] The trial court determined that a reasonable and appropriate amount of spousal support would be $4,810. This amount was determined by taking $5,000, the demonstrated anticipated budget, less $1,300, the yield from the property division, and multiplying that number by one hundred thirty percent, the amount for projected income tax. After adding a two-percent processing charge, the trial court arrived at $4,906.20 as the amount of spousal support.