OPINION
Michael J. Reed appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, which overruled his motion to vacate a Qualified Domestic Relations Order ("QDRO") and refused to reduce his spousal support or child support obligations.
Michael and Juanita Reed were divorced on May 19, 1995. At that time, the parties had been married for over eighteen years, and Mr. Reed had been employed by General Motors/Delphi for approximately twenty-five years. With respect to Mr. Reed's pension benefits, the divorce decree provided:
 [Mrs. Reed] shall be entitled to receive thirty-six percent (36%) of [Mr. Reed's] retirement benefits with General Motors, accrued as of the date of the Final Decree of Divorce herein. A separate Qualified Domestic Relations Order shall be prepared by Defendant's counsel and submitted for approval by the Court.
 On February 20, 1997, after two motions by Mrs. Reed for contempt of court findings, Mr. Reed's attorney filed a QDRO which provided in Section 7 that Mrs. Reed was entitled to an amount "equal to the actuarial equivalent of Thirty Six Percent (36%)" of Mr. Reed's accrued benefit under the plan as of May 19, 1995. The agreement further provided:
 * * * [Mrs. Reed] shall be entitled to a pro-rata share of any employer-provided early retirement subsidy provided to [Mr. Reed] on the date of his retirement * * *. Such pro-rata share shall be calculated in the same manner as [Mrs. Reed's] share of [Mr. Reed's] retirement benefits is calculated pursuant to Section 7 of this Order.
 This order was signed by the attorneys for both parties, but not by the parties themselves.
In the spring of 1999, when he was 49 years old, Mr. Reed began discussing pension benefits with General Motors as he approached thirty years of service. At this time, Mr. Reed apparently discovered for the first time that the QDRO provided for Mrs. Reed to receive thirty-six percent of any early retirement subsidy he chose to accept. On September 10, 1999, Mr. Reed filed a motion to vacate the QDRO on the basis that it did not conform to the divorce decree. He subsequently filed a motion to reduce spousal support and child support as well.
Mr. Reed's motions were tried to a magistrate on November 23, 1999, along with a motion by Mrs. Reed for an increase in child support and spousal support. The magistrate refused to vacate the QDRO and denied the motions with respect to increasing or decreasing spousal support and child support. The trial court adopted the magistrate's report and recommendation over Mr. Reed's objections on August 8, 2000.
Mr. Reed raises three assignments of error on appeal.
 I. THE TRIAL COURT ERRED BY REFUSING TO VACATE THE QUALIFIED DOMESTIC RELATIONS ORDER.
 Mr. Reed claims that the trial court erred in failing to vacate the QDRO because it gave Mrs. Reed "a benefit that was not included in the divorce decree" and because the court had not retained jurisdiction to modify the pension benefits.
It is our view that Mr. Reed's early retirement subsidy was a function of his years of service, and thus was properly shared with Mrs. Reed in the same proportion as the other pension benefits. As discussed supra, the divorce decree provided that Mrs. Reed was to receive thirty-six percent of Mr. Reed's pension benefits that had accrued as of the date of the divorce. This is exactly what the QDRO provided, except that the QDRO fleshed out the agreement in much more detail, as was its purpose. The QDRO detailed when Mrs. Reed would be entitled to begin distributions, how those distributions would be calculated, the effect of Mrs. Reed's death and other contingencies, and the provision for the division of early retirement subsidies, along with a variety of other issues. If we were to agree with Mr. Reed's argument that the provisions of the QDRO could not be any more detailed or inclusive than the language of the divorce decree without running afoul of the decree, the QDRO would have served no purpose. In our view, the trial court reasonably concluded that the language of the QDRO reflected the parties' agreement at the time of the divorce decree and that the early retirement subsidy was within the scope of pension benefits divided therein. Moreover, it is noteworthy that Mr. Reed's attorney, who drafted the QDRO, apparently thought that this provision reflected the parties' intentions.
The first assignment of error is overruled.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO MODIFY THE SPOUSAL SUPPORT OBLIGATION.
 Mr. Reed argues that the trial court erred in concluding that he had retired voluntarily, and that he was, therefore, not entitled to a reduction of his spousal support obligation. He contends that he had retired for medical reasons, that his retirement had amounted to a substantial change of circumstances which reduced his income, and that he had therefore been entitled to a reduction in his spousal support obligation. Mr. Reed further argues that the trial court erred in failing to consider whether spousal support was still necessary because Mrs. Reed had substantially more income at the time of the hearing than she had had at the time of the divorce.
When asked at the hearing why he had retired from General Motors in October 1999, Mr. Reed's answer was twofold. From his testimony, it was clear that Mr. Reed's retirement coincided with an impending split between General Motors and Delphi. By retiring when he did, Mr. Reed received pension benefits through General Motors, rather than through Delphi. This was the "last window" to retire from General Motors; thereafter, the pension benefits would be available only through Delphi, where the retirement agreement was not yet "set up." Mr. Reed also testified that his health played a role in his decision because he "didn't think [he] could continue working much longer." He testified that he had had numerous surgeries on his knees and hand, as well as back problems, and that he hoped to have knee replacement surgery. Mr. Reed admitted, however, that no one had forced him to retire. He testified that doctors had "tried to get [him] to quit several times" but that he had continued to work because he wanted to achieve thirty years before retiring. No other evidence was offered as to the medical necessity of his retirement. Evidence was also presented that Mr. Reed had entered into a new business venture with his brother in the months prior to his retirement. The two men had borrowed over $100,000 to open a tavern. At the time of the hearing, Mr. Reed testified that he was not receiving any income from the tavern.
 Based on this evidence, the magistrate concluded that Mr. Reed's motion for a reduction of spousal support based on his retirement from General Motors and the resultant loss of income was unwarranted because the change had been voluntarily made. The magistrate apparently concluded that the retirement was motivated by speculative fears of changes in the benefit package rather than by medical necessity. The magistrate found the medical evidence unconvincing. The magistrate recommended that spousal support not be reduced because Mr. Reed had chosen to retire with full knowledge of his spousal support and child support obligations, as well as the obligations he had incurred in his new business venture.
Trial courts are granted broad discretion concerning awards of spousal support, and their orders will not be disturbed on appeal absent an abuse of discretion. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, syllabus. An abuse of discretion involves more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. In re Jane Doe I (1991), 57 Ohio St.3d 135,137; Blakemore, 5 Ohio St.3d at 219. When applying an abuse of discretion standard, a reviewing court is not free to merely substitute its own judgment on factual or discretionary issues for that of the trial court. Buckles v. Buckles (1988), 46 Ohio App.3d 102, 110.
We have observed that a voluntary retirement may be treated differently than other voluntary reductions in income for purposes of spousal support calculations. In Melhorn v. Melhorn (Jan. 30, 1989), Montgomery App. No. 11139, unreported, we approved the trial court's statement that "[a] change in income due to retirement reasonably in advance of the expected date of retirement does provide a basis for modification of alimony if it was not done in an attempt to avoid a court ordered obligation to an ex-spouse." In this case, the trial court does not appear to have considered Melhorn in concluding that Mr. Reed had retired voluntarily and therefore was not entitled to a reduction in his support obligations. We do not dispute that there was evidence in the record to support the trial court's conclusion that Mr. Reed had retired for pecuniary reasons rather than medical ones based on his testimony about the possible change in pension benefits and about his new business venture. Moreover, the trial court was not required to credit Mr. Reed's testimony about his physical condition, even though it was unrefuted.State v. Denham (Jan. 22, 1999), Miami App. No. 98 CA 9, unreported;State v. Bumgardner (June 7, 1996), Greene App. No. 95 CA 11, unreported. However, the trial court should have examined this evidence with an eye to whether Mr. Reed's intent, in choosing early retirement, was to avoid his support obligations. If not, and if his choice to retire appears to have been a reasonable one under the circumstances, the trial court should treat Mr. Reed's retirement as a change of circumstances, should not impute additional income to him, and should adjust his support obligations accordingly. Thus, we will remand this matter to the trial court for reconsideration of the evidence in light ofMelhorn.
Mr. Reed also argues that the trial court erred in not reducing his spousal support obligation because it did not consider Mrs. Reed's pension benefits from his retirement plan.
In making a spousal support order, or modifying a current spousal support order, the trial court is required to consider the retirement benefits of the parties. R.C. 3105.18(C)(1)(d). Mrs. Reed's annual distribution from the QDRO is $7,276, an amount she was not receiving when the current spousal support order was made. The trial court should have, but apparently did not, consider Mrs. Reed's retirement benefit in determining not to reduce Mr. Reed's spousal support obligation.
We also note that the court does not appear to have considered the increase in Mrs. Reed's currently earned income in concluding that no modification of spousal support was warranted. It was undisputed that Mrs. Reed had no income at the time of the divorce and had an annual income at the time of the hearing of approximately $19,700. Although Mr. Reed's child support obligation had been recalculated in 1999 to reflect Mrs. Reed's income of approximately $15,500, the spousal support order had never been reviewed in light of her income.
Thus, we are of the view that the trial court did err in failing to consider whether Mrs. Reed's retirement benefit from Mr. Reed's retirement plan and her increased income warranted a modification of spousal support. We will remand this matter for the further purpose of the trial court's consideration of these matters.
The second assignment of error is sustained.
 III. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO MODIFY THE CHILD SUPPORT OBLIGATION.
 Mr. Reed argues that the trial court should have reduced his child support obligation because Mrs. Reed's income had "increased substantially" due to the pension benefits received from his retirement plan and because his income had been reduced by his retirement.
 As we discussed under the second assignment of error, the trial court must determine not only whether Mr. Reed's retirement was voluntary, but whether he had voluntarily reduced his income to avoid his support obligations when he retired from General Motors. If not, his retirement, if otherwise reasonable, must be treated as a change of circumstances justifying modification of his child support obligations. See Melhorn, supra. (We believe that Melhorn, which was concerned with spousal support, should apply with equal force to child support.)
Mrs. Reed's distributions from the retirement plan should be considered. Furthermore, Mrs. Reed's income from her employment has increased since the time of the prior child support order. The trial court does not appear to have considered these matters. Thus, when the trial court reviews the issue of spousal support on remand, it should also review whether a reduction in child support might be appropriate. As always, the trial court has broad discretion on this issue and the trial court may consider all relevant facts in determining whether a reduction is appropriate.
The third assignment of error is sustained.
The judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
GRADY, J. and KERNS, J., concur.
(Hon. Joseph D. Kerns sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
 ____________ Wolff, J.,