OPINION
Appellant/Cross-Appellee Lyda Stalnaker ("appellant") and Appellee/Cross-Appellant ("appellee") Russell Stalnaker appeal the decision of the Stark County Court of Common Pleas, Domestic Relations Division, concerning various issues addressed by the trial court in its Findings of Fact and Judgment Entry — Decree of Divorce filed on February 5, 1999. The following facts give rise to this appeal. Appellant Lyda Stalnaker and Appellee Russell Stalnaker were married on December 5, 1990. The parties had one child, Paul Stalnaker, born January 10, 1991. At the time of trial of this matter, Paul was seven years old. Prior to her marriage to appellee and shortly after the birth of their son, appellant worked as a cook at the Frontier Restaurant in Hartville. Appellant terminated her employment at the restaurant, in January 1992, and has remained voluntarily unemployed. Appellee has been employed by Carter Lumber Company for twenty-one years. Appellee started with Carter Lumber Company as a manual laborer and currently holds a management position. Appellee filed a complaint for divorce on January 9, 1997. Appellant filed an answer and counterclaim on January 23, 1997. Appellee answered the counterclaim on January 30, 1997. On May 22, 1997, appellant amended her answer and counterclaim by adding certain third-party defendants. Appellee moved to dismiss the third-party defendants and the trial court granted appellee's motion on June 27, 1997. The trial court appointed Rosemarie Hall to serve as guardian ad litem. The trial of this matter commenced on March 31, 1998. The trial resumed and concluded on June 23, 1998. On April 2, 1998, prior to the conclusion of the trial in this matter, appellant submitted, with the trial court, a proposed shared parenting plan. The trial court issued Findings of Fact and Judgment Entry — Decree of Divorce on February 5, 1999. The trial court granted the parties a divorce, ordered the parties to abide by the terms of a shared parenting plan, ordered appellee to pay child support and spousal support, and divided the parties' property. Appellant filed her notice of appeal on February 24, 1999. Appellee filed his notice of cross-appeal on March 5, 1999. The parties set forth the following assignments of error for our consideration.
 I. THE TRIAL COURT ERRED BY FAILING TO FOLLOW THE PRECEDENT IN "PICKENS" THAT DIVIDEND REINVESTMENT OF SEPARATE PROPERTY IS AN ASSET ACQUIRED DURING THE MARRIAGE AND CONSTITUTES MARITAL PROPERTY.
 II. THE TRIAL COURT ERRED BY DISREGARDING THE "PRIMARY CARE GIVER DOCTRINE". IT IS UNDISPUTED THE APPELLEE WORKED APPROXIMATELY FIFTY-FIVE HOURS PER WEEK AND THE APPELLANT WAS THE HOMEMAKER. IN ADDITION, PAUL EXPRESSED A WISH TO LIVE WITH THE APPELLANT BECAUSE APPELLEE "WOULDN'T MAKE TIME TO CARE FOR ME".
Cross-Appeal
 I. THE TRIAL (SIC) ERRED IN CHARACTERIZING TRACEABLE SEPARATE PROPERTY OF CROSS-APPELLANT AS MARITAL PROPERTY.
 II. THE TRIAL COURT ERRED IN FINDING 200 SHARES OF CARTER LUMBER STOCK TO BE MARITAL ASSETS.
 III. THE TRIAL COURT ERRED IN ITS DIVISION OF MARITAL ASSETS BY DISTRIBUTING A DISPROPORTIONATE AMOUNT OF LIQUID ASSETS TO APPELLEE.
 IV. THE TRIAL COURT ERRED IN ORDERING EACH PARTY TO BE RESPONSIBLE FOR HIS OR HER ATTORNEY FEES.
 V. THE COURT ERRED IN ESTABLISHING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.
 VI. THE TRIAL COURT ERRED IN FINDING THAT CROSS-APPELLANT AGREED THAT CROSS-APPELLEE SHOULD CARE FOR THE PARTIES' CHILD DURING THE SUMMER AND SCHOOL VACATIONS.
 VII. THE TRIAL COURT ERRED BY IMPUTING AN INTEREST RATE OF 5% TO ALL OF CROSS-APPELLANT'S FINANCIAL ASSETS.
 VIII. THE TRIAL (SIC) ERRED IN CALCULATING THE CHILD SUPPORT OBLIGATION OF CROSS-APPELLANT.
 IX. THE TRIAL COURT ERRED IN FAILING TO ADOPT THE RECOMMENDATION THAT CROSS-APPELLANT BE DESIGNATED THE DECISION-MAKER WITH RESPECT TO THE PARTIES' CHILD.
 I
In her First Assignment of Error, appellant contends the trial court erred by failing to follow the precedent in Pickens v. Pickens (Nov. 12, 1993), Meigs App. No. 92CA501, unreported, because dividend reinvestment of separate property is an asset acquired during the marriage and constitutes marital property. We disagree. The Ohio Revised Code defines "marital property" and "separate property". "Marital property" includes all real and personal property that currently is owned by either or both of the spouses and acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i). A trial court is to assume that any property acquired during the marriage is marital, unless evidence is offered to rebut that presumption. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 160. "[A] spouse's premarital property remains separate property as long as it is traceable, regardless of whether it has been commingled with other property." Id. "Marital property" also includes all "active income" or any income and appreciation on separate property due to the labor, in-kind, or monetary contribution of either of the parties that occurred during the marriage. R.C. 3105.171(A)(3)(a)(iii). "Separate property" is any real or personal property acquired by one spouse prior to marriage. R.C. 3105.171(A)(6)(a)(ii). It also includes any "passive income" and any appreciation acquired from separate property during the marriage. "Passive income" is defined as income acquired other than as a result of labor, monetary or in-kind contribution by either spouse. R.C. 3105.171(A)(4). As a general rule, "[p]roperty that is specifically and directly traceable to property outside the marriage" constitutes separate property. Buckles v. Buckles (1988), 46 Ohio App.3d 102, 111. "Separate property" may be converted to "marital property" through the process of transmutation. "The party seeking to have a particular asset classified as `separate property' has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Peck v. Peck (1994), 96 Ohio App.3d 731,734. Generally, a review of a trial court's division of marital property is governed by an abuse of discretion standard. Martin v. Martin (1985), 18 Ohio St.3d 292, 294. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely and error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, because appellant challenges the trial court's finding of fact concerning whether dividend reinvestment is marital property, we review the trial court's decision as to that specific finding of fact under a manifest weight of the evidence standard. Under this standard, we do not weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279, syllabus. Appellant's First Assignment of Error focuses on appellee's McDonald and Company IRA account. The following evidence was presented to the trial court concerning this account. Prior to the parties' marriage, appellee maintained an IRA account with Falls Savings Bank. Judgment Entry, Feb. 5, 1999, at 16. On November 15, 1989, more than one year before the marriage, the account had a balance of $17,889.61. Id. In December 1989, Falls Savings Bank converted to a stock company and stock in the bank was offered to the public under the name "Falls Financial." Id. Falls Financial offered depositors an option to either maintain their IRA's with the bank or purchase stock in the bank. Id. Appellee chose to purchase stock with his IRA funds but also wanted to continue with an IRA account. Id. at 17. On November 17, 1989, appellee opened an IRA account with McDonald and Company and transferred all his funds from his Falls Savings Bank IRA into the McDonald and Company IRA. Id. The McDonald and Company account has two components: a cash reserve account or money market and an investment or stock account. Id. Appellee used the money transferred into the McDonald and Company account to purchase 1,431 shares of Falls Savings' stock on December 20, 1989. Id. As Falls Financial paid dividends on its stock, the dividends accumulated in the money market account. On July 16, 1992, after the parties married, appellee purchased an additional 88 shares of Falls Financial stock using the accumulated dividends. Id. At some point, appellee issued a standing order to his stockbroker to reinvest the dividends without contacting him each time. Id. As a result of accumulating additional shares from dividend proceeds and stock splits, on June 13, 1995, appellee owned a total of 3,278 shares of Falls Financial stock. Id. at 18. In 1995, Falls Financial merged with Fifth Third Bank. In exchange for 3,278 shares of Falls Financial stock, appellee received 1,570 shares of Fifth Third Bank stock. Id. Appellee continued to accumulate shares of Fifth Third Bank stock through purchases, dividend proceeds and stock splits. Id. As of December 31, 1997, appellee owned a total of 3,640 shares of Fifth Third Bank stock. Id. Appellant maintains, on appeal, that the increase in the value of the McDonald and Company IRA that occurred during the duration of the marriage is marital property subject to division. Appellant further maintains various elements of co-mingling and transmutation further substantiate her claim that appellee's dividend reinvestment funds accumulated during the marriage are marital property. Appellant relies on several cases in support of this argument. The first case appellant refers to is the Pickens case. The issue in Pickens concerned the increase in value of the Putnam Growth Fund husband owned prior to the parties' marriage. Pickens at 3. The trial court found the increase in the value of the fund to be marital property. Although the husband did not make any further contributions to the Putnam fund during the marriage, in a split decision, the Fourth District Court of Appeals found the increase in the value of the Putnam fund to be marital property. Id. at 5. In reaching this decision, Judge Stephenson stated as follows: Thus, during the marriage, appellant did in fact make additional contributions to the fund through reinvestment of dividend income. Our research into Ohio law reveals little in the way of explanatory guidance as to how this reinvested income should be treated. Logic would dictate that it be viewed no differently than if it had been disbursed directly to appellant [husband] who then spent the cash on additional shares. Property acquired during marriage is marital property, see 24 American Jurisprudence 2d (1983) 860 Divorce Separation, Section 880, and we perceive of no reason why those additional investments in the Putnam fund should not be so treated here. Id. at 4.
Judge Harsha concurred in Judge Stephenson's decision on the basis that:
 * * * a significant amount of marital funds $160,722, was devoted to protecting appellant's Putnam Growth Fund in the form of income tax payments. If this money had not been used to pay taxes on appellant's separate property, it would have been available for marital use, be it consumption or investment. * * * [B]ased upon the significant nature of the marital income used here, I cannot say the trial court abused its discretion [in concluding the growth in the Putnam fund that occurred during the marriage is marital property.] Id. at 10.
Appellant claims the trial court, as well as this court, should follow the legal precedent contained in Pickens. We disagree. In addition to the fact that Pickens is a split decision, the decision in Pickens is not controlling on this court. S.Ct.R.Rep.Op. 2(G) provides, in pertinent part: (G) Unofficially published opinions and unpublished opinions of the Courts of Appeals may be cited by any court or person subject to the following restrictions, limitations, and exceptions:
 (1) An unofficially published or unpublished opinion shall not be considered controlling authority in the judicial district in which it was decided except between the parties thereto when relevant under the doctrines of the law of the case, res judicata or collateral estoppel or in a criminal proceeding involving the same defendant.
 (2) In all other situations, each unofficially published opinion or unpublished opinion shall be considered persuasive authority on a court, including the deciding court, in the judicial district in which the opinion was rendered. * * *.
Clearly, we are not required to follow the Fourth District Court of Appeals' decision in Pickens. Furthermore, in Russell v. Russell (June 30, 1997), Scioto App. No. 96 CA 2474, unreported, the Fourth District Court of Appeals did not follow Judge Stephenson's reasoning in Pickens and instead found "* * * no basis to find that the interest on the husband's separate property, which is clearly passive income, was transmuted into marital property * * *" in the absence of evidence that marital funds were used to pay the tax liabilities of the separate property in question. Id. at 4. Based on the above case law, we find the trial court's decision that the McDonald and Company fund is appellee's separate property supported by competent, credible evidence and therefore, is not against the manifest weight of the evidence. The Eighth District Court of Appeals reached a similar conclusion in the recent case of Horung v. Horung (Apr. 22, 1999), Cuyahoga App. Nos. 73659, 73667, unreported. In Horung, husband appealed the trial court's decision that wife's trust was separate property. Id. at 1. Husband argued, on appeal, that the increase in the trust during the marriage resulted from the wife's decision to permit reinvestment of yearly dividends to which she was entitled but did not take from the fund. Id. Husband maintained the wife's decision to reinvest was labor and such dividends became active income resulting in marital property subject to reasonable division. Id. The Eighth District Court of Appeals disagreed with the husband's argument on appeal and affirmed the decision of the trial court finding the wife's trust fund to be separate property. Id. at 4. In reaching this decision, the court of appeals found that the trust was established by the wife's father prior to her marriage, the trust always paid its own taxes, and neither husband nor wife contributed to the trust's value. Id. As in the case sub judice, appellee established the McDonald and Company fund prior to his marriage to appellant, appellee did not use marital funds to pay taxes on the fund, and neither appellee nor appellant made contributions to the fund. Appellant's First Assignment of Error is overruled.
 II
In her Second Assignment of Error, appellant contends the trial court erred by disregarding the "primary care" doctrine as it is undisputed that appellee works approximately fifty to fifty-five hours per week. Further, appellant maintains the parties' minor son has stated that he would prefer to live with appellant because appellee would not have time to care for him. We find the trial court created the shared parenting plan in this matter. It was not submitted by either party and therefore, is in violation of R.C.3109.04(D)(1)(a)(iii). Appellant filed a proposed shared parenting plan on April 2, 1998. Under this proposed plan, appellant would be designated the residential parent and appellee would be granted visitation one week from Thursday at 6:00 p.m. to Monday at 8:30 a.m. and the next week from Tuesday at 6:00 p.m. to Thursday at 8:30 a.m. Appellee requested, at trial, that he be designated the residential parent of the minor child and that appellant be granted visitation each weekday during the school year from the time the child returns home from school until appellee picks him up at 6:00 p.m. and alternating weekends. Appellee did not file a proposed shared parenting plan with the trial court. The procedure a trial court must follow, if only one parent files a proposed shared parenting plan, is contained in R.C. 3109.04(D)(1)(a)(iii). Under this section of the statute, the trial court may order the other parent to file a proposed shared parenting plan. The trial court must then review each plan to determine if any plan is in the best interest of the child. The trial court did not adopt either of the proposed plans but instead fashioned its own shared parenting plan in which each parent is designated the residential parent of the minor child and the minor child would be with appellee every weekday from 6:00 p.m. to 8:00 a.m. the following morning. On school days, appellant would greet the minor child when he returns home on the school bus at approximately 3:00 p.m. and care for him until 6:00 p.m. Weekends are to alternate every Friday at 6:00 p.m. until Sunday at 6:00 p.m. In McClain v. McClain (1993), 87 Ohio App.3d 856, 857, the Ninth District Court of Appeals discussed the trial court's role in adopting shared-parenting plans. A court may determine that one of the submitted plans is in the best interest of the children and adopt that plan verbatim. Id. [citing R.C. 3109.04(D)(1)(a)(ii)] Barring adoption of one of the submitted plans, however, a court may only make suggestions for modification of the plans to the parties. Id. If the parties do not make appropriate changes or if the court is not satisfied with the changes that are resubmitted following the suggestions for modification, then the court may deny the request for shared parenting of the children. Id. The statute does not give the court authority to create its own shared-parenting plan. A satisfactory plan must be filed with the court for adoption; otherwise, the court will not adopt any plan. R.C.3109.04(D)(1)(b).
In the case sub judice, the trial court ordered a plan of its own creation. The plan had not been submitted by either party. Therefore, the court-ordered shared-parenting plan is in violation of R.C. 3109.04(1)(a)(iii). Appellant's Second Assignment of Error is sustained on the basis that the court-ordered shared-parenting plan is in violation of R.C. 3109.04(1)(a)(iii).
 Cross-Appeal I
Appellee contends, in his First Assignment of Error on cross-appeal, that the trial court incorrectly characterized, as marital assets, 1,507 shares of stock in Fifth Third Bank, two IRA accounts with Fifth Third Bank, and a certificate of deposit opened at Falls Savings Bank and currently held with Fifth Third Bank. We disagree. As noted in appellant's First Assignment of Error, the party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. Peck at 734. As to each of the assets listed above, the trial court determined appellee failed to establish they were separate property by a preponderance of the evidence. Judgment Entry, Feb. 5, 1999, at 21-24. We find the trial court's decision is not against the manifest weight of the evidence. Appellee's father testified that the 1,507 shares of Fifth Third Bank stock, valued at $123,574, were acquired prior to the parties' marriage when appellee's father purchased 400 shares for each of his children in 1989. Tr. at 177-178. Appellee's father admitted that he did not have with him, at trial, any documentation to verify this purchase. Id. Accordingly, the trial court concluded appellee did not trace the stocks to any pre-marital or separate property by a preponderance of the evidence and concluded the stocks were marital property. Appellee also claims, in this assignment of error, that two IRA accounts opened with Fifth Third Bank shortly after the parties' marriage are separate property. One account is in appellee's name and has a balance of $10,364.69 and the second account is in appellant's name and has a balance of $5,906. Appellant claims both of these IRA's were opened with separate funds from a matured certificate of deposit, the remainder of which was placed into another certificate of deposit. As with the shares of Fifth Third Bank stock, appellee did not have any documentation to support this argument. Finally, appellee contends a certificate of deposit he opened with Falls Savings Bank and currently held by Fifth Third Bank is also separate property. The certificate of deposit was valued at $10,527.74. Appellee argues this certificate of deposit was funded by money left over from a matured pre-marital certificate of deposit. Appellant maintains he used the rest of the funds from the matured certificate of deposit to purchase the two IRA's. As with the above assets, appellee had no documentation to support this argument. Further, the trial court noted that appellee opened the IRA's on March 9, 1991, but did not open this certificate of deposit, with money left after the purchase of the two IRA's, until five and one-half months later. Judgment Entry, Feb. 5, 1999, at 24. We find the trial court's decision is not against the manifest weight of the evidence when it determined appellee did not establish, by a preponderance of the evidence, that the above assets are separate property. Appellee's First Assignment of Error on cross-appeal is overruled.
 II
In his Second Assignment of Error on cross-appeal, appellee contends the trial court erred when it found 200 shares of Carter Lumber stock to be marital property. We disagree. Prior to his marriage to appellant, appellee owned 700 shares of Carter Lumber stock. After the parties married in 1990, appellee acquired 400 additional shares. Appellee argues the evidence presented at trial established that he purchased, with marital assets, 100 shares in November 1991 and another 100 shares in December 1994. Appellee maintains the evidence also established that he purchased 100 shares in October 1992 and another 100 shares in November 1993 as the result of gifts of money from his parents. Appellee maintains the shares of stock purchased in 1992 and 1993, with money from his parents, are separate property. In support of this argument, at trial, appellee presented two checks as exhibits. The first check written on November 25, 1992, was from appellee's mother to appellee. The check was not written to Carter Lumber. Further, the check was written three weeks after the stock certificate was issued, by Carter Lumber, on November 3, 1992. The second check was written by appellee, to Trina Carter, on October 27, 1993, nineteen days prior to the November 15, 1993 stock certificate. The trial court found appellee presented no documentation to support his argument that this check came from a non-marital account. The trial court determined that appellee did not meet his burden in establishing these 200 shares as separate property. Judgment Entry, Feb. 5, 1999, at 26. On appeal, appellee cites to R.C. 3105.171(A)(6)(a)(vii) and argues a gift to one spouse is presumed to be marital property unless it can be proved otherwise by clear and convincing evidence. "`Clear and convincing evidence' means that degree of proof which will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Barkley at 168, citing Cincinnati Bar Assn. v. Massengale (1991), 58 Ohio St.3d 121, 122; Reynolds v. Reynolds (Feb. 8, 1993), Clinton App. No. CA92-07-013, unreported. We find the trial court's decision is supported by the manifest weight of the evidence when it concluded the 200 shares of Carter Lumber stock were marital property. Appellee's testimony and evidence presented at trial did not prove to the trial court, by clear and convincing evidence, that the money for the purchase of these 200 shares of stock was given solely as a gift to appellee as required by R.C. 3105.171(A)(6)(a)(vii). Appellee's Second Assignment of Error on cross-appeal is overruled.
 III
In his Third Assignment of Error on cross-appeal, appellee maintains the trial court erred in its division of marital assets by distributing a disproportionate amount of liquid assets to appellant. We disagree. As noted in appellant's First Assignment of Error, our review of a trial court's division of marital property is governed by an abuse of discretion standard. Martin v. Martin (1985), 18 Ohio St.3d 292, 294. In support of this assignment of error, appellee argues the trial court failed to consider R.C. 3105.171(F), which provides, in pertinent part: In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
* * *
(4) The liquidity of the property to be distributed;
* * *
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
In dividing the parties' marital property, the trial court awarded appellee his 401(k) plan with assets of $59,280, an IRA account with a value of $10,365, and the stock he holds in Carter Lumber. The trial court also ordered appellee to pay appellant approximately $21,000 in cash in order to equalize the amount of money distributed to each party. Appellee points out that the trial court awarded appellant a certificate of deposit worth more than $10,000 and $123,574 worth of Fifth Third Bank stock. Appellant also received an automobile free of any tax obligation. Appellee argues that based on this distribution, the trial court failed to consider the above factors contained in R.C.3105.171(F). Appellee claims the assets awarded to him are tied up in tax-deferred plans and when he finally begins receiving distributions from these plans, he will be required to pay income taxes on the amounts received. Appellee further argues the trial court's distribution of marital assets has left him with insufficient liquid funds to pay his court-ordered obligations and to support himself. We find the trial court did not abuse its discretion in dividing the parties' marital property. The trial court awarded both parties stock which either party could place on the market and sell. Further, there is no evidence that the trial court did not take into consideration the factors contained in R.C. 3105.171(F). Accordingly, we find the trial court's division of marital property does not place appellant in any better position than appellee. Therefore, we conclude the trial court did not abuse its discretion in dividing the parties' marital assets. Appellee's Third Assignment of Error on cross-appeal is overruled.
 IV
Appellee contends, in his Fourth Assignment of Error on cross-appeal, that the trial court erred in ordering each party to be responsible for his or her own attorney fees. We disagree. Appellee claims he was required to pay half of appellant's attorney fees because he placed his $12,000 bonus in the parties' joint checking account which was necessitated by the fact that appellant paid her attorney fees from the joint account. A trial court's determination to grant or deny a request for attorney fees will not be disturbed absent an abuse of discretion. Motorist Mut. Ins. Co. v. Brandenburg (1995), 72 Ohio St.3d 157, syllabus. We do not find the trial court abused its discretion in ordering each party to be responsible for his or her own attorney fees even though appellant paid her fees from a joint account with appellee. Appellee is employed and has yearly income of $92,878. Appellant is a homemaker and cares for the parties' minor son. Based on the disparity of income between the parties, we find the trial court did not abuse its discretion. Appellee's Fourth Assignment of Error on cross-appeal is overruled.
 V
In his Fifth Assignment of Error on cross-appeal, appellee contends the trial court erred in establishing the amount and duration of spousal support. We disagree. The trial court ordered appellee to pay spousal support in the amount of $1,200 per month until the parties' son turns eighteen and graduates from high school or is otherwise emancipated. Judgment Entry, Feb. 5, 1999, at 48. Appellee claims this award of spousal support was inappropriate because this was not a marriage of long duration in which the husband and wife agreed the wife would leave work to be a full-time homemaker. Rather, appellee claims appellant did not discuss her decision to quit her job with him. Appellee also claims the trial court failed to take into consideration its division of property between the parties. Finally, appellee argues the amount that he is required to pay for child support and spousal support will more than exhaust his monthly take-home pay which he claims is $2,050 before taxes and his monthly obligations for spousal support and child support total $1,600. A review of a trial court's decision relative to spousal support is governed by an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,355. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb at 131. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore at 219. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. In making a determination of spousal support, the trial court must consider the following factors under R.C. 3105.18(C)(1): Award of spousal support; modification. (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payments, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 (a) The income of the parties, from all sources * * *; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable.
Trial courts are also governed by the standards and guidelines imposed by the Ohio Supreme Court in Kunkle v. Kunkle (1990),51 Ohio St.3d 64, paragraph one of the syllabus. This case provides: Except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.
The following evidence was submitted to the trial court concerning the parties' financial situation. Appellee is employed as a manager at Carter Lumber. He has worked at Carter Lumber for twenty-one years. Appellee earned $64,795.60 in 1997 and $61,304.60 in 1996. Appellee also received a bonus of a percentage of the store's yearly bonuses. Appellant is unemployed. Appellant last worked over eight years ago as a cook in a restaurant where she earned approximately $10,500. Since quitting her employment, appellant has been a full-time homemaker and mother. The parties submitted Joint Exhibit "C", at trial, which is a vocational evaluation that indicates appellant has the ability to earn $5.25 to $5.75 per hour with limited or no medical benefits. The trial court determined appellee's gross income to be $92,878 per year. In addition, appellee admitted, at trial, that he receives at least an additional $20,000 per year as a gift from his father. The trial court awarded appellee pre-marital property consisting of 3,640 shares of stock in Fifth Third Bank which were valued at $297,655.77 as of December 31, 1997. The trial court also awarded appellee 700 of the 1,100 shares of Carter Lumber stock as pre-marital property totaling $217,700. Under the property division ordered by the trial court, appellee will receive a 401(k) plan worth $59,280 and an IRA account worth $10,364.69. Appellee also has social security benefits. The trial court found appellant's employment opportunities limited because she must be available for her son in the summers and may only be able to work five or six hours per day during the school year. Based on the above evidence, it is clear the trial court did consider the factors listed in R.C. 3105.18(C)(1)(a) through (n) in concluding appellant is entitled to spousal support in the amount of $1,200 per month until the parties' minor child turns eighteen and graduates from high school or is otherwise emancipated. The trial court's award of spousal support does not constitute an abuse of discretion. Appellee's Fifth Assignment of Error on cross-appeal is overruled.
 VI
Appellee contends, in his Sixth Assignment of Error on cross-appeal, that the trial court erred in finding that he agreed that appellant should care for the parties' minor son during the summer and school vacations. Appellee's Sixth Assignment of Error on cross-appeal is moot since we previously determined, in appellant's Second Assignment of Error, that the court-ordered shared-parenting plan is in violation of R.C. 3109.04(1)(a)(ii). Appellee's Sixth Assignment of Error on cross-appeal is overruled as premature.
 VII, VIII
We will address appellee's Seventh and Eighth Assignments of Error on cross-appeal simultaneously as both concern the calculation of income for child support purposes. Appellee contends, in his Seventh Assignment of Error on cross-appeal, that the trial court erred when it imputed an interest rate of five percent to all of his financial assets. In his Eighth Assignment of Error on cross-appeal, appellee contends the trial court erred in calculating his child support obligation. We agree with both assignments of error. The trial court made the following findings of fact in calculating child support. First, appellant is currently voluntarily unemployed and determined her imputed income to be $8,000 per year. Judgment Entry, Feb. 5, 1999, at 12-13. Second, the trial court made the following finding concerning income producing assets: The division of property ordered herein will give each party income producing assets. An investment in bonds at this time would earn 5%, and, therefore, the Court will impute an income of 5% to all of the parties' investment accounts, except the Plaintiff's 401k at Carter Lumber ($59,280.00) and an equivalent amount ($59,280.00) of the assets the Defendant will be receiving. Id. at 13.
In calculating child support, the trial court must determine the parties' gross income. R.C. 3113.215(A)(2) defines "gross income" as follows: * * * the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes, * * *, income from salaries, wages, overtime pay and bonuses * * * commissions, royalties, tips, rents, dividends, severance pay, pensions, interest, trust income, annuities, social security benefits, * * *, disability insurance benefits, * * * spousal support * * *, and all other sources of income; * * * self-generated income; and potential cash flow from any source. In using this five percent figure, the trial court calculated appellee's income to be $92,878. Judgment Entry, Feb. 5. 1999, at 14. The trial court calculated appellant's income to be $13,130. Id. Based on these calculations, the trial court found appellee responsible for child support in the amount of $873 per month. Id. at 15. Appellee argues that although the Fifth Third Bank stock produces dividends, the dividends cannot be withdrawn without a penalty and for that reason, it was improper for the trial court to impute a five percent rate of return on this asset and to consider such amount as "income" for purposes of calculating his support obligation. Appellee also claims the trial court improperly applied the five percent figure to his Carter Lumber stock. Appellee claims there is no evidence, in the record, supporting the five percent rate of return figure. Appellee also argues the trial court has penalized him for saving for his retirement. We agree with appellee that the trial court erred when it imputed income of five percent of all of the parties' investments. Neither party submitted evidence regarding this issue nor is there any testimony in the record to support this figure. Accordingly, we remand the issue of imputed income for the trial court to conduct a hearing on this matter. Finally, appellee claims the trial court erred by arbitrarily excepting the sum of $59,280 from those assets awarded to appellant which are to be considered income producing for purposes of calculating her post-divorce income. The judgment entry indicates the trial court did this to offset appellee's 401(k) plan, valued at $59,280. Id. at 14. We do not find the trial court erred in doing so as the trial court merely sought to treat both parties equally. Based on the above, we find the trial court erred in imputing an interest income rate of five percent to all of appellee's financial assets. If upon remand, the trial court determines the imputed income figure is other than five percent, the trial court shall recalculate child support to comply with this new percentage of imputed income on appellee's investments. Appellee's Seventh and Eighth Assignments of Error on cross-appeal are sustained.
 IX
In his Ninth Assignment of Error on cross-appeal, appellee contends the trial court erred in failing to adopt the recommendation that he be designated the decision-maker with respect to the parties' minor child. In appellant's Second Assignment of Error, we previously determined the court-ordered shared-parenting plan is in violation of R.C. 3109.04(1)(a)(ii). The issue of whether appellee should be designated the decision-maker for the parties' minor child is a custody issue that the trial court will have to address on remand. Appellee's Ninth Assignment of Error on cross-appeal is overruled as premature.
For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
By: Wise, P.J. Hoffman, J., and Farmer, J., concur.