DECISION AND JUDGMENT ENTRY
This is an appeal from the Lucas County Court of Common Pleas, Domestic Relations Division, which ordered defendant-appellee, John F. Werner, to pay spousal support to plaintiff-appellant, Judith Werner. Appellant raises two assignments of error:
 "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REDECIDING THE ENTIRE ISSUE OF SPOUSAL SUPPORT WHEN IT DID NOT HEAR TESTIMONY REGARDING THE ENTIRE ISSUE OF SPOUSAL SUPPORT, ADOPT ITS PREDECESSOR'S FINDINGS OF FACT AND CONCLUSIONS OF LAW, OR
 LIMIT ITS ORDER TO THE SOLE ISSUE OF THE FINAL AMOUNT OF SPOUSAL SUPPORT.
 "II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS AWARD OF SPOUSAL SUPPORT WHEN ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE CLEARLY NOT SUPPORTED BY THE FACTS OF THIS CASE."
The facts of this case are as follows. The parties were married in 1962. Eight children were subsequently born of the marriage and were emancipated at the time of the proceedings herein. On February 23, 1993, appellant filed a complaint for divorce. Appellee filed an answer to the complaint on March 17, 1993. A temporary spousal support order was granted, effective January 1, 1994, in the amount of $1,226.67 per month. The trial court granted the divorce on November 14, 1996. In its decision, the trial court reserved its determination on the final amount of spousal support until after the sale of the marital home.
Upon the sale of the home, the parties were again before the trial court. It was then discovered that Judge June Rose Galvin, who presided over the original matter, had retired and been replaced. At that time, the parties entered a stipulation permitting the successor judge, Judge Norman Zemmelman,[1] to hear the issue of spousal support.
On February 12, 1999 and March 3, 1999, a hearing was held to determine the amount of the spousal support award. At the hearing, the following relevant evidence was presented.
At the time of the hearing, appellant was sixty years old and testified that she does not have a college degree. Appellant did attend college for three years, at the time of a teacher shortage, and was able to teach elementary school from 1959 until 1963. After 1963, she did some volunteer tutoring. In order to teach today, appellant testified that she would need to attend college for three years.
Appellant testified that she has osteoporosis and has had four surgeries on her hands. Two surgeries were to repair broken wrists and two were for arthritis in each thumb. Appellant also testified that she has sinus problems, high cholesterol, poor circulation and dry skin, all of which require medication.
Appellant testified that she used the proceeds of the sale of the marital home, $190,000, to buy a replacement home. She also purchased a 1998 Honda Accord. Appellant's adult son resides with her and is employed. She receives no financial assistance from him. From the divorce, appellant received a tax refund of $17,112, $17,173 of funds which had been held in escrow, $25,000 from the sale of an office condo, an IRA at Fidelity Investments valued at approximately $36,000, and, through a "roll over," three IRA's totally $171,000. At the time of the hearing, appellant testified that she had a Capital Bank money management account in the amount of $58,362 and a checking account with a balance of $6,034.
Appellant testified that at age sixty-two she is eligible to receive forty percent of appellee's social security benefit, of approximately $476 per month. If she waits until the age of sixty-five she is eligible to receive fifty percent, or $635.
Appellee testified that he has a bachelor's degree in business and is one hundred percent owner of the C.D. Werner Insurance Agency, Inc. His son Matthew is the only other employee. On approximately January 1, 1998, appellee entered into a management agreement with Knight Insurance Agency. The essence of the agreement is that Knight runs the business and pays appellee fifty-five percent of the monthly commissions from the C.D. Werner accounts.
Gross receipts for 1996 totaled $244,569, in 1997, $242,233. In 1998, the amount was drastically reduced due to the failure of the P.I.E. Mutual Insurance Company. Gross receipts totaled approximately $190,000, appellee receiving $104,000, and Knight $85,000. Appellee testified that he expected a similar amount for 1999.
Appellee's personal income was also reduced due to the P.I.E. insolvency. In 1996, he earned $90,195, in 1997, $67,377. In 1998, his expected income was $71,000.
At the time of the hearing, appellee resided in the family cottage in LaSalle, Michigan. His expenses included utilities and court-ordered maintenance of a life insurance policy with appellant as beneficiary. The cottage is in disrepair and appellee indicated that he would like to move to Toledo.
As to his health, appellee testified that he has tinnitus, or a constant ringing in his ears, he is morbidly obese, has an enlarged prostrate and hip problems. Due to his advancing age (sixty-five at the time of the hearing), medical problems, and forty-three years selling insurance, since December 1998, appellee had been receiving social security benefits of $1,270 per month. As a result, he has reduced his salary to $1,292 per month to avoid a penalty.
On June 23, 1999, the trial court found that appellant was entitled to spousal support in the amount of $1,833.33 per month until the death of either party. Once appellant begins collecting social security benefits at the age of sixty-two, the amount will be reduced to $1,333.33. The trial court's decision was entered into judgment on October 26, 1999. This appeal followed.
In appellant's first assignment of error, she argues that the trial court abused its discretion by "re-determining" the entire issue of spousal support when, in fact, the original findings of fact and conclusions of law left only the final amount of spousal support, after the sale of the marital home, to be determined. Appellant claims that, pursuant to Civ.R. 63(B), the trial court had the option of either: (1) adopting his predecessor's findings of fact and conclusions of law and simply deciding the final amount of spousal support; or (2) re-trying the entire case.[2]
As to the award of spousal support, the November 14, 1996 judgment of divorce established that appellant was entitled to spousal support. The court, however, also noted:
 "As the plaintiff has agreed to sell the residence, and her future plans are uncertain regarding the purchase or rental of a future residence, the court will give the plaintiff the option to have the court reserve the award of spousal support until the sale of the residence and her choice of abode, in order to determine the income available to her from her investments * * *."
The trial court also retained continuing jurisdiction over the award.
When the parties returned to the court for final determination of the spousal support award, they entered into a stipulation which provides, in relevant part:
 "Parties are in agreement that they submit the issue of spousal support, payment of bills, amount, term and conditions, to Judge Norman Zemmelman. Court required briefs on these issues which were previously filed. After discussion with the Court, both parties agreed to proceed as indicated. Specifically waive any objections that the Judge does not have the authority to hear the issue."
Civ.R. 63(B) permits a successor judge, after findings of fact and conclusions of law are rendered, to perform acts in accordance with such findings absent a basis for contrary action. Ingalls v. Ingalls (1993),88 Ohio App.3d 570, 574. Appellant's argument that the trial court abused its discretion by determining more than the final amount of spousal support is unpersuasive. The 1996 trial court decision stated that its final determination was reserved until the sale of the marital home and appellant acquiring new housing. At that time, upon her request, a hearing would be held to examine her financial position and the costs associated with the new home. Thereafter, as quoted above, the parties stipulated that the hearing before the successor judge would encompass the amount of spousal support and its terms and conditions. Upon careful review of the hearing transcript and exhibits, we cannot say that the evidence presented exceeded the scope contemplated by the predecessor judge or the clear language of the stipulation. Accordingly, because we find that the trial court did not abuse its discretion relative to its determination of the issue of spousal support we find appellant's first assignment of error not well-taken.
In appellant's second assignment of error, she contends that the trial court's award of spousal support was not supported by the record and, thus, was an abuse of discretion. Appellant, in her assignment of error, has made four sub-assignments. We shall discuss each in turn.
R.C. 3105.18(C)(1) sets forth the following fourteen factors which the trial court must consider before making a spousal support award:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable."
It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support. Bolinger v. Bolinger (1990), 49 Ohio St.3d 120. Such an award will be not be reversed unless a reviewing court after considering the totality of the circumstances, finds that the trial court abused its discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v.Cherry (1981), 66 Ohio St.2d 348, 355. The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore, (1983), 5 Ohio St.3d 217, 219.
In determining whether or not to award spousal support, a trial court must consider all the relevant factors under R.C. 3105.18 and then weigh the need for support against the ability to pay. Layne v. Layne (1992),83 Ohio App.3d 559, 562-563. The resulting award must be "fair, equitable and in accordance with the law." Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 94. An equitable result requires that "[t]o the extent feasible, each party should enjoy, after termination of a marriage, a standard of living comparable to that established during the marriage adjusted by the various factors of [R.C. 3105.18]." Buckles v. Buckles
(1988), 46 Ohio App.3d 102, 110.
Appellant first argues that based upon her monthly expenses, the $1,833.33 per month spousal support award is unreasonably low. The trial court ordered that appellee pay appellant $1,833.33 per month terminable upon his death. The amount was to be reduced by $500, to $1333.33 per month upon appellant's claim on appellee's social security benefits when appellant turns sixty-two.
Appellant submitted to the trial court monthly expenses totaling $3,808. The trial court reduced the amount of expenses to $3,000. In making its award determination, the trial court discussed each of the R.C. 3105.18(C)(1) factors. In particular, the court determined that appellee is receiving $15,504 annually from his company and $15,240 from social security. The court acknowledged that appellee could draw more income from the company but that from each additional $3 increment, he would have to repay $1 of his social security benefit.
As to retirement benefits, the trial court observed that, outside of his social security benefits, appellee has no other source of retirement income. Appellant, on the other hand, has a $36,417 Fidelity IRA and two additional IRA accounts totaling $207,445.
The trial court further noted that appellant has $64,000 in cash available for investment. The trial court also imputed income of $400 to $500 monthly to appellant for the amount her adult son should pay to help defray her expenses.
Based upon the foregoing, and using a five percent return rate, the trial court imputed approximately $14,000 income to appellant annually. This amount, coupled with the monthly spousal support award totals $3,000 per month. Upon our careful review of the testimony and exhibits presented at the hearing, we cannot say the trial court abused its discretion in fashioning the spousal support award as it did.
As an offshoot of the above sub-assignment of error, appellant contends that the trial court erred by imputing income to her based upon the fact that her adult son lives with her rent-free. Again, the trial court has broad discretion in determining the proper amount of spousal support.Bolinger, supra. Appellant did testify that her adult son is employed. Based upon this fact, we cannot say that the trial court's imputation of rental income was unreasonable.
Appellant next contends that in rendering its final decision, effective July 1, 1999, the trial court erred by merging all of the prior temporary orders in such a way that spousal support was omitted for the entire month of June.
In its June 23, 1999 decision and final order of October 27, 1999, the trial court merged all temporary orders for spousal support, "except for the current arrearage of temporary spousal support * * *" which was to be paid pursuant to the court's May 27, 1999 order. There is no indication that the temporary spousal support order was not due and owing for the month of June. We thus find that the temporary spousal support was due for the month of June 1999. If said amount was not paid, appellant should petition the trial court which retains jurisdiction over such matters.
In her final sub-assignment of error, appellant disputes the trial court's decision to terminate spousal support upon appellee's death. In general, Ohio courts favor the termination of spousal support on a date certain. Kunkle v. Kunkle, 51 Ohio St. 3 d at 68. R.C. 3105.18(B) provides: "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise." Upon review of the facts of this case and the broad discretion of the trial court in fashioning such awards, we cannot say that the trial court abused its discretion in awarding spousal support terminable upon the death of appellee.
Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, we find that substantial justice was been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Court costs of this appeal are assessed to appellant.
Melvin L. Resnick, J., James R. Sherck, J., CONCUR.
 ____________________________ Mark L. Pietrykowski, P.J.
JUDGE
[1] Proper names have been used only for the sake of clarity.
[2] Civ.R. 63(B) provides:
 "If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned or findings of fact and conclusions of law are filed, another judge designated by the administrative judge, or in the case of a single-judge division by the Chief Justice of the Supreme Court, may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial."